## A96A2180. WELLS v. ROBERTS.
(483 SE2d 339)

RUFFIN, Judge.

Mae Pearl Wells sued Lonza Roberts for injuries and damages allegedly resulting from an automobile collision. The jury returned a verdict for Wells in the amount of $10,000. Wells moved for a new trial, arguing that the $10,000 verdict was inadequate as a matter of law. The trial court denied the motion, and Wells appeals. For reasons which follow, we affirm.

The evidence reveals that on September 3, 1993, Wells and Roberts were involved in an automobile collision. Wells, who was 45 years old, was taken to the hospital, treated, and released the next morning at approximately 2:00 a.m. with instructions to stay in bed for several days and see her doctor. Wells' family doctor treated her for a period of time and then referred her to the Hughston Clinic, which she first visited on October 15, 1993, complaining of pain in her left shoulder and neck. Physicians at the Hughston Clinic initially diagnosed Wells' problems as a rotator cuff and cervical strain.

Subsequently, on January 24, 1994, Wells complained to her Hughston Clinic physician, Dr. John Burkus, of pain radiating down her left arm. Believing that this arm pain might be the result of a pinched nerve, Dr. Burkus ordered further diagnostic testing, which revealed that Wells had two bulging discs in the cervical area of her spine and degenerative disc disease.

Approximately one year later, Wells returned to Dr. Burkus, complaining again of pain and weakness in her left arm, as well as neck pain. Dr. Burkus performed more diagnostic testing and, at this point, found no evidence of a pinched nerve in her neck. However, testing did reveal mild carpal tunnel syndrome. Dr. Burkus concluded that Wells had neck pain possibly related to the disc bulges and unrelated arm pain. Dr. Burkus saw Wells for the last time on March 20, 1995, at which time he found that she was "doing well" and that her left arm had improved.

Wells sued Roberts for damages, including medical expenses and lost wages resulting from the collision. Finding for Wells, the jury's verdict for $10,000 was as follows: $6,235.60 for lost wages, $3,140 for medical expenses, and $624.40 for pain and suffering.

1. In her first enumeration of error, Wells argues that the verdict was inadequate as a matter of law because "the undisputed special damages in the case were $4,507.00 in medical expenses and

$10,605.20 in lost wages, for total special damages of $15,112.20." We disagree.

"[W]hether the verdict was inadequate is an issue which is addressed to the discretion of the trial judge and the standard of review in this court is whether the trial judge abused his discretion in denying the motion for new trial. [Cit.]" *Mansfield v. Pizza Hut &c.*, 202 Ga. App. 601, 602 (415 SE2d 51) (1992). "The general rule on appeal of an award of damages is that a jury's award cannot be successfully attacked so as to warrant a new trial unless it is so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake on the part of the jurors. Even though the evidence is such as to authorize a greater or lesser award than that actually made, the appellate court will not disturb it unless it is so flagrant as to shock the conscience. . . . Moreover, the trial court's approval of the verdict creates a presumption of correctness that will not be disturbed absent compelling evidence." (Citations and punctuation omitted.) *Turpin v. Worley*, 206 Ga. App. 341, 343 (1) (425 SE2d 895) (1992).

We find no compelling evidence to disturb the jury's verdict. On appeal, Wells argues that "where, *under the uncontradicted evidence* [her] special damages amounted to more than the verdict without even considering any amount for pain and suffering, the verdict [is] so inadequate as to require a new trial." (Citations and punctuation omitted; emphasis supplied.) *Williams v. Opriciu*, 198 Ga. App. 663, 664 (1) (402 SE2d 744) (1991). The evidence relating to special damages, however, is not "uncontradicted" in this case.

(a) Although Wells claims that Roberts did not contradict her medical expenses evidence, the record reveals a dispute over whether the incurred expenses resulted from the subject collision.

Dr. Burkus testified that Wells' injuries were consistent with the type of automobile collision that she had described to him. On cross-examination, however, Dr. Burkus admitted that he could not rule out the possibility that her shoulder problems resulted from the repetitive-motion assembly line work she performs for her employer. As described by Wells, she repeats the same task "over and over again" all day at work. Dr. Burkus similarly testified that carpal tunnel syndrome may result from this type of repetitive activity. Dr. Burkus also agreed that his diagnosis of a pinched nerve in Wells' neck was based on her subjective complaints and that those same symptoms could have been part of the later-diagnosed carpal tunnel syndrome. Finally, Dr. Burkus testified on cross-examination that degenerative disc disease, as well as the other various symptoms Wells experienced, can occur simply from normal wear and tear on the human body. In light of this testimony, we cannot find that the cause of her injuries was "undisputed."

To support her claim of no dispute, Wells argues that Roberts stipulated that she incurred $4,507 in medical expenses from the collision. The record, however, shows no such stipulation. Instead, the trial transcript reveals that Roberts stipulated to the *amount* of Wells' medical bills. "While the parties did stipulate to the total amount of medical expenses incurred, there was no stipulation that all of these expenses were incurred as a result of the [collision]. Rather, this was a contested issue in the case." *Palmer v. Farmer,* 184 Ga. App. 753, 754 (2) (362 SE2d 453) (1987).

"The question of damages is ordinarily for the jury. . . ." *Turpin,* supra at 342. In this case, Roberts presented testimony indicating that Wells' medical problems could have been caused by something other than the subject collision. Given this testimony, the $3,140 award for medical expenses is neither "flagrantly inadequate" nor shocking to the conscience. Id. at 343.

(b) Special damages relating to Wells' lost wages claim were similarly in dispute. Wells testified that as a result of the collision, she stayed out of work for 28 weeks, from September 7, 1993 through January 3, 1994, and again from January 16, 1995 until April 3, 1995. Wells further testified that her doctor recommended that she stay home from work during the first period of absence.

Competing evidence indicates, however, that she may have been able to return to work earlier. The record reveals that by October 29, 1993, her treating physician had decided to *"keep her on light duty,* with lifting up to twenty pounds, and then *see her back in a month and return her to work without restrictions at that time."* (Emphasis supplied.) According to Wells' appellate brief, her job on the assembly line "is not a heavy job, and it involves only light pieces of aluminum." Furthermore, Wells has pointed to no evidence in the record that her doctors recommended that she stay out of work from January 16, 1995 through April 3, 1995. In fact, Dr. Burkus testified that by March 20, 1995, Wells was "doing well" and her left arm had "gotten a lot better."

In light of this testimony, it was not undisputed that the collision forced Wells to stay home from work for 28 weeks. Furthermore, as noted in Division 1 (a), evidence presented to the jury raised questions as to whether the subject collision caused the medical problems afflicting her during these absences. Accordingly, we find no compelling evidence that the jury's verdict relating to lost wages was shocking, unsupported, or flagrantly inadequate. *Turpin,* supra.

2. In her second enumeration of error, Wells argues that the trial court erred in excluding the mortality table she offered at trial. "The admission of evidence is a matter resting largely within the sound discretion of the trial court, and appellate courts will not interfere absent an abuse of that discretion." *Hartman v. Shallowford Commu-*

*nity Hosp.*, 219 Ga. App. 498, 501 (3) (466 SE2d 33) (1995).

" 'Where the age of a person is shown, his expectancy of life may be determined by the jury without any other direct evidence on the subject. Tables of the probable length of life and its probable worth may be useful, but are not conclusive or absolutely essential for that purpose.' " (Citation omitted.) *Henslee v. MARTA*, 142 Ga. App. 821, 822 (1) (237 SE2d 225) (1977). Wells testified to her age at trial. Accordingly, we find no abuse of discretion, and we affirm the trial court's judgment.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED MARCH 4, 1997.

*Douglas L. Breault*, for appellant.
*Walker, Hulbert, Gray & Byrd, Charles W. Byrd*, for appellee.