### A99A0907. WITTY et al. v. McNEAL AGENCY, INC. et al.
(521 SE2d 619)

ELDRIDGE, Judge.

In 1988, Jack Witty, plaintiff-appellant ("Witty"), went to work for defendant-appellee McNeal-Jansson Financial Services, Inc. ("JFSI"). Eric Jansson, defendant-appellee ("Jansson"), was one of the stockholders and manager.

Upon being employed as a stockbroker, Witty signed an employment contract that was terminable at will by either party by delivering written notice of termination two weeks prior to the termination date. The purpose was to give JFSI two weeks within which to contact its clients prior to the employee beginning to work for a competitor brokerage house and soliciting the clients that he had handled. The contract also contained a non-disclosure provision and a liquidated damages provision.

Witty's compensation with JFSI was 40 percent of gross commissions generated by the brokerage house's clients' accounts. The remainder of the commissions were divided, with 40 percent to JFSI and 20 percent to IM&R and Raymond James, its parent companies. JFSI paid all office expenses.

In 1994, Witty decided to leave JFSI. Witty sought employment with a competitor Interstate Johnson Lane ("IJL"), plaintiff-appellant. On October 28, 1994, Witty gave JFSI written notice of his resignation, effective immediately, and accepted immediate employment with IJL.

On October 28, after receiving Witty's resignation, JFSI's personnel director wrote and called all clients that Witty worked with in an attempt to keep their accounts with JFSI; the staff worked through the weekend contacting clients. Of the 334 clients that Witty had serviced, JFSI retained 202 and 132 were lost to either IJL or another brokerage house.

On October 31, 1994, Jansson and JFSI, in written communication to Witty and IJL, threatened to sue Witty for breach of contract.

Witty brought a declaratory judgment action against Jansson and JFSI to declare the validity of the employment contract and his duties under it. Defendants answered, counterclaimed, and sought a TRO. Jansson and JFSI added IJL as an additional defendant in the counterclaim.

On July 25, 1997, a jury returned a verdict against all of Witty's claims and for the defendants on their counterclaims against Witty and IJL. On the contract claim, the jury found that there had been a breach of contract for violation of the notice provision and non-disclosure provision with no damages owed by Witty and $82,690 in damages owed by IJL. The jury found slander by Witty and IJL with damages by each of $2,409. No punitive damages were awarded. The

jury found that the defendants were entitled to attorney fees of $45,781 payable by Witty and $91,562 payable by IJL. Plaintiffs immediately made an oral motion for j.n.o.v., which was denied.

On August 4, 1997, judgment was entered as follows: $82,690 for breach of contract by IJL; $2,409 each against Witty and IJL for slander; attorney fees of $45,781 against Witty and attorney fees of $91,562 against IJL.

On September 2, 1997, plaintiffs moved for a new trial, and on November 7, 1997, the motion was denied. On December 4, 1997, the notice of appeal was filed. On January 5, 1999, the appeal was docketed in this Court.

1. Plaintiffs contend that the trial court erred in: (a) excluding evidence of defendants' stubborn litigiousness, (b) awarding of attorney fees which were not authorized by the evidence and were grossly excessive, and (c) giving a charge under OCGA § 13-6-11, which was erroneous. We do not agree. While the court for convenience and clarity has combined three enumerations of error by subject matter, enumeration of error two raised multiple enumerations, which was improper. See *West v. Nodvin*, 196 Ga. App. 825 (397 SE2d 567) (1990).

(a) Plaintiffs contend that the trial court erred in excluding evidence that plaintiffs had asked defendants to submit to expedited arbitration. According to the plaintiffs, defendants' alleged refusal constituted evidence of stubborn litigiousness on plaintiffs' claim and was also evidence of plaintiffs' defense to defendants' counterclaim for attorney fees. Since plaintiffs did not recover on their claims, then OCGA § 13-6-11 attorney fees were not recoverable, and there was no harm done to the plaintiffs by such admission, even if it were error to exclude such evidence. See *CSX Transp. v. Barnett,* 199 Ga. App. 611, 612 (1) (405 SE2d 506) (1991).

Absent a mandatory arbitration clause in a contract, refusal to arbitrate is not, in itself, stubborn litigiousness, because arbitration is only one of the alternative dispute resolution procedures to avoid trial and to resolve a controversy. Unless made mandatory by state or federal law, arbitration is voluntary by agreement of all parties. See OCGA §§ 9-9-2; 9-9-6; 9-9-32; 9-9-61. If refusal to do an act that is a voluntary exercise of rights constitutes stubborn litigiousness, then arbitration no longer would be voluntary. Thus, stubborn litigiousness is not the failure to follow a procedure or the following of a particular procedure in seeking to resolve a legal dispute.

Within OCGA § 13-6-11, stubborn litigiousness means forcing the opposite party to litigate when there exists no bona fide controversy. *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 857 (1) (501 SE2d 30) (1998); *Typo-Repro Svcs. v. Bishop*, 188 Ga. App. 576, 580 (2) (373 SE2d 758) (1988). Since the jury found for the defend-

ants, then the defendants had a bona fide controversy. Thus, the trial court did not abuse its discretion in denying admission of such irrelevant and immaterial evidence.

(b) The jury awarded damages for slander and for contract interference. Both are intentional torts, which indicates bad faith and would authorize such damages. See *Professional Consulting Svcs. v. Ibrahim*, 206 Ga. App. 663, 665-666 (3) (426 SE2d 376) (1992). It is for the jury to decide if attorney fees are appropriate under the circumstances for bad faith, and a verdict will be upheld if there is any evidence to support its verdict. OCGA § 13-6-11; *Professional Consulting Svcs. v. Ibrahim*, supra at 665-666; *Arford v. Blalock*, 199 Ga. App. 434, 439 (9) (405 SE2d 698) (1991).

Plaintiffs agreed with the defense that each side would state in their place the amount of attorney fees that each contended was recoverable without testimony, documentary evidence, or cross-examination. When they had an opportunity to do so, plaintiffs made no objection to defendants' statement of the amount of attorney fees contended and the method that defendants used to arrive at the alleged damages. Thus, they cannot raise the issue for the first time on appeal. See *Standard Guar. Ins. Co. v. Bundrage*, 264 Ga. 632, 633 (452 SE2d 474) (1994); *Allen v. Peachtree Airport Park Joint Venture*, 231 Ga. App. 549, 550 (2) (499 SE2d 690) (1998). To do so would be induced error by their agreement with such procedure. *Outdoor Systems v. Woodson*, 221 Ga. App. 901 (473 SE2d 204) (1996). In addition plaintiffs waived any objection by failing to contemporaneously make it. *MacDonald v. MacDonald*, 156 Ga. App. 565, 566 (1) (a) (275 SE2d 142) (1980).

Further, without making an exception, plaintiffs allowed the trial court to charge the jury on such proffer of proof by the defendants regarding what plaintiffs now contend was substantial error of law under the circumstances. Accordingly, the plaintiffs waived all such exceptions. OCGA § 5-5-24 (c); *Irvin v. Oliver*, 223 Ga. 193, 195-196 (2) (154 SE2d 217) (1967); see also *Orr v. CSX Transp.*, 233 Ga. App. 530, 531 (2) (505 SE2d 45) (1998).

Further, IJL did not object to the jury verdict form either before it was sent out to the jury or after the verdict was returned, which verdict form contained provision for the award of attorney fees against IJL. In fact, plaintiffs' counsel announced to the trial court: "I have no quarrel with this form. . . . I have no objection to this form, this verdict form."

(c) Although the amended counterclaim adding IJL may not have asserted a claim for attorney fees against IJL under OCGA § 13-6-11 by citation, it asked for the award of attorney fees in its prayer in (k) (iii) as to Count 12 for tortious interference with contract, which is an implicit prayer under OCGA § 13-6-11 for litigation expenses. Fur-

ther, the evidence, defendants' argument, and the jury verdict form made plain that such damages under OCGA § 13-6-11 were sought from IJL, and IJL made no objection. Under OCGA § 9-11-15 (b), pleadings are conformed to the evidence. See *Rockdale Body Shop v. Thompson*, 222 Ga. App. 821, 823 (2) (476 SE2d 22) (1996). The award of attorney fees must be affirmed, because there is some evidence to support such award on either bad faith or stubborn litigiousness grounds. *Morris v. Savannah Valley Realty,* 233 Ga. App. 762, 764-765 (3) (505 SE2d 259) (1998).

2. Plaintiffs contend that the trial court erred in admitting over objection evidence as to the non-disclosure clause in the employment contract and in not directing a verdict on such issue. We do not agree.

(a) The non-disclosure of information provision of the employment contract was relevant and material to the issues in litigation and was admissible.

Defendants introduced evidence that Witty solicited existing business away from the defendants prior to his termination of employment. At the time of his leaving, Witty took customer lists and immediately began to use the lists to solicit defendants' clients. Thus, Witty violated his fiduciary duty of employment, because "[u]pon terminating employment, an employee has the right to take with him all the knowledge he obtained so long as no property of the employer is taken." *Wolff v. Protégé Systems,* 234 Ga. App. 251, 252 (506 SE2d 429) (1998). Therefore, the nondisclosure provision was relevant even if portions were unenforceable. Since the motion in limine was overly broad and not tailored to a legitimate objection, then it was proper to deny such motion. See *Jones v. Blackburn*, 75 Ga. App. 791, 794 (44 SE2d 555) (1947).

The term "any other information" at first glance appears vague, overly broad, and ambiguous. However, when read in context with the other designated categories of items, it clearly refers only to information that a competitor would want to use in obtaining an unfair competitive edge regarding securities, insurance policies, investments, policyholder lists, customer lists, and services provided to such clients. It has long been a rule of construction, i.e., rule ejusdem generis, that a general term following specific terms is confined to the same kind or category of thing. See OCGA §§ 13-2-1; 13-2-2 (4); *Gore v. State*, 79 Ga. App. 696 (54 SE2d 669) (1949).

The employment contract non-disclosure provision differentiates "other information" from "property" when the entire provision is examined, because "any use of this information or property by persons not in the employment of the Company would provide said persons an unfair competitive advantage," which indicates that "property" and "information" about the "property" are separate things within the non-disclosure provision. Further, the limitation on disclo-

sure of "information" or "information" about the "property" does not extend beyond the "term of the contract," i.e., "[t]he Employee agrees that during the term of this contract, he will not allow any person not employed by the Company access to said files or property"; however, "after the termination of his employment, he will not directly or indirectly, use, take, copy or appropriate any of the aforesaid property of the company."

The non-disclosure provision in no way affects

> a man's aptitude, his skill, his dexterity, his manual and mental ability, and such other subjective knowledge as he obtains while in the course of his employment, [which] are not the property of his employer, and the right to use and expand these powers remains his property unless curtailed through some restrictive covenant entered into with the employer.

(Citations and punctuation omitted.) *Thomas v. Best Mfg. Corp.*, 234 Ga. 787, 788-789 (2) (218 SE2d 68) (1975) (*"Thomas"*). Such factors are excluded from this nondisclosure provision. The limitation on nondisclosure of "other information" is limited to that period between notice of the termination date, i.e., two weeks and actual termination. The clear purpose of a two week head-start over the employee is so that the Company can protect its client base by contacting clients before the ex-employee can contact them. Such head-start enables the defendants to protect their investment in time, effort, and cost in acquiring the clients. This is a reasonable and restricted interest.

(b) Defendants and Witty agreed by written contract that defendants' customer lists and related documents were the property of the defendants and were to be used only at their place of employment during the term of his employment with them and by no third person. Witty was further prohibited from using this proprietary property after his termination for any purpose.

Clearly, this provision has a limit as to "time . . . or activity," because the provision is limited to "the term of this contract" as to the property and to two weeks as to "other information." However, similar clauses have "been upheld as a valid means of protecting documented confidential information of an employer even though the language used reflects no limits as to 'time, territory or activity.' [Cit.]" *Equifax Svcs. v. Examination Mgmt. Svcs.*, 216 Ga. App. 35, 38 (1) (b) (453 SE2d 488) (1994); accord *Nunn v. Orkin Exterm. Co.*, 256 Ga. 558, 560 (2) (350 SE2d 425) (1986). Thus, the non-disclosure provision was enforceable despite the breadth, because it does not affect the *Thomas* factors, including subjective knowledge acquired during the course of employment or ability to compete in any territory with

the former employer. See *Nunn v. Orkin Exterm. Co.*, supra at 560; *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181, 187-188 (4) (236 SE2d 265) (1977); *Thomas v. Best Mfg. Corp.*, supra at 788 (1).

The reasonableness of the non-disclosure provision turns on the factors of time and the nature of the business interest sought to be protected. *Durham v. Stand-By Labor of Ga.*, 230 Ga. 558, 563-564 (2) (198 SE2d 145) (1973). Here, the contract sought to keep the identities of clients secret as well as what product, security, insurance, or service was provided to each of them. Id. at 564. The restraint was reasonably tailored to the protection of such information. By the very volatility of the stock and commodity markets and the nature of renewal premiums on insurance, such information has a short period of value once the employee leaves. Thus, the evidence showed that the defendants only sought a two week head-start on Witty in contacting their clients in order to protect their information and customer lists. From the evidence, a weekend was enough to salvage approximately two thirds of the clients for the defendants. Documents, records, and other papers as property were to be protected indefinitely.

(c) Contrary to the contentions of the plaintiffs, the non-disclosure provision of the contract was not invalid, and plaintiffs were not entitled as a matter of law to either a directed verdict or to a judgment notwithstanding the verdict. *Nunn v. Orkin Exterm. Co.*, supra at 560. Where there is any evidence to support the jury verdict, it is proper to affirm the denial of the motions, unless it is demanded as a matter of law, because the jury is the sole and exclusive judge of the weight and credit to give to the evidence. *General Ins. Svcs. v. Marcola*, 231 Ga. App. 144, 145 (2) (497 SE2d 679) (1998).

3. Plaintiffs contend that the trial court erred in submitting to the jury an erroneous and ambiguous special verdict form regarding defendants' breach of contract claim against IJL, in accepting the verdict on such form, and in entering judgment on such verdict form. We do not agree.

Neither the pleadings nor the evidence raised the issue that defendants sued IJL for breach of contract. Instead, defendants tried a tortious interference with contract claim. The only reason that the jury can be thought to have returned a verdict against IJL on the breach of contract count was because the jury verdict form that plaintiffs expressly agreed to submit to the jury provided only for breach of contract, instead of for tortious interference with contract. This was error.

However, IJL made no timely objection about such jury verdict form, but expressly agreed to it. After the verdict was returned, IJL did not object to the verdict or form and could have had the jury polled as to their intent and understanding regarding the verdict

returned against IJL for breach of contract. However, IJL failed to do so. Neither in its motions for j.n.o.v. nor for new trial was such objection made.

(a) If the verdict was illegal and the trial court erroneously accepted the verdict, then plaintiffs were under a duty to timely object to the irregularity before the jury was excused. Plaintiffs' failure to do so waived any defects. A timely objection permits the trial court to reform or remodel the verdict in the presence of the jury before they are excused and saves precious judicial time and resources. *West Ga. Pulpwood &c. Co. v. Stephens*, 128 Ga. App. 864, 870 (3) (198 SE2d 420) (1973); see *Folds v. Reese*, 140 Ga. App. 291, 292 (2) (231 SE2d 808) (1976). "Upon hearing an improper verdict rendered, a litigant should not sit silently by, hoping to gain a retrial by failing to object." (Citation omitted.) *Clifton v. Clifton*, 249 Ga. 831, 832 (294 SE2d 518) (1982); accord *LaBanz v. Bank South, Macon*, 198 Ga. App. 79, 82 (1) (400 SE2d 357) (1990); *Folds v. Reese*, supra at 292 (1).

(b) On plaintiffs' motion for new trial and j.n.o.v., they failed to raise the issue that the judgment was entered against IJL on a theory of breach of contract instead of tortious interference with contract. Since this is not a case of either double recovery, change of the award by the trial court after dispersal of the jury, or the award of punitive damages without actual damages so that the "award was improper as a matter of law," then the objection to the judgment must have been raised in the trial court in plaintiffs' motion for directed verdict, j.n.o.v., or new trial. Otherwise, it is waived. *Ford Motor Co. v. Tippins*, 225 Ga. App. 128, 132-133 (4) (483 SE2d 121) (1997); *Long v. Marion*, 182 Ga. App. 361, 365 (3) (355 SE2d 711) (1987); see also *Nalley Northside Chevrolet v. Herring*, 215 Ga. App. 185, 188 (5) (450 SE2d 452) (1994).

If the judgment from an illegal verdict based upon "improper damages" is objected to for the first time either on motions for new trial or j.n.o.v. or on direct appeal without post trial motions, then such is the first opportunity that the issue could be raised and such is preserved for appellate review. See *Ford Motor Co. v. Tippins*, supra at 132 (5); *Long v. Marion*, supra at 365-366 (5); *Preferred Risk Ins. Co. v. Boykin*, 174 Ga. App. 269, 276-277 (10) (329 SE2d 900) (1985). However, this is not such a case. Plaintiffs raised the issue for the first time on appeal and not in their motions for directed verdict, j.n.o.v., or new trial. Therefore, IJL's failure to timely object at the first opportunity as to the form of the judgment results in a waiver of such alleged error. See *First Union Nat. Bank v. Boykin*, 216 Ga. App. 732, 735 (1) (455 SE2d 406) (1995); see also *Ford Motor Co. v. Tippins*, supra at 133.

4. Plaintiffs contend that the trial court erred in denying IJL's

motion for directed verdict on the defendants' counterclaim for tortious interference with Witty's employment contract. We do not agree.

"Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence." (Citations omitted.) *Taylor v. Ga. Power Co.*, 136 Ga. App. 412, 413 (1) (221 SE2d 222) (1975); accord *General Ins. Svcs. v. Marcola*, supra at 145.

IJL was a stranger to the employment contract between Witty and the defendants and acted without privilege. While IJL could hire Witty away from the defendants, it had no privilege to induce Witty to terminate his employment with the defendants without giving the defendants two weeks notice as required in the contract. IJL lacked a legitimate economic interest in inducing Witty to terminate the contract early and bring his customer lists with him. *Disaster Svcs. v. ERC Partnership*, 228 Ga. App. 739, 740-741 (492 SE2d 526) (1997). In fact, IJL had a wrongful motive in having Witty make the termination immediate without the required notice period; such action gave Witty time to solicit the defendants' clients so soon after the termination that the defendants would not have time to contact their clients first. Witty sought to acquire the clients for IJL to the detriment of the defendants during the two weeks. *Equifax Svcs. v. Examination Mgmt. Svcs.*, supra at 37. Further, IJL expected Witty to bring some or all of the customer lists, even if he had to hand write them (as he did), so that he could solicit them to move their accounts during the two week period.

Witty breached the notice provision and the nondisclosure provision of the employment contract with the aiding, abetting, and urging of IJL. The defendants lost approximately one third of the clients as a result, either to IJL or others, because the defendants did not have adequate time to properly contact them due to lack of notice.

The elements of tortious interference with contractual relations, business relations, or potential business relations are: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff. See *Disaster Svcs. v. ERC Partnership*, supra at 740; *Renden, Inc. v. Liberty Real Estate &c.*, 213 Ga. App. 333, 334-335 (2) (444 SE2d 814) (1994). In this case IJL intermeddled with Witty's employment contract to persuade him to come to work for it without giving the required two weeks notice.

The any evidence standard of review for the denial of the motion for directed verdict requires the affirmance of the trial court. *McCannon v. McCannon*, 231 Ga. App. 601 (1) (499 SE2d 684) (1998); *Doubletree, Inc. v. Schanley*, 226 Ga. App. 776 (487 SE2d 506) (1997).

5. Plaintiffs contend that the trial court erred in admitting speculative and incompetent evidence of defendants' damages and lost profits. We do not agree.

> Where a party sues for specific damages, he has the burden of showing the amount of the loss, and of showing it in such a way that the jury may calculate the amount from the figures furnished, and will not be placed in the position where their allowance of any sum would be mere guesswork.

*National Ref. &c. Co. v. Parmalee*, 9 Ga. App. 725, 726 (1) (72 SE 191) (1911). "However, the party does not lose his right of action for the damages because he can not furnish exact figures." Id. at 726. "The rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages." (Citations and punctuation omitted.) *Molly Pitcher Canning Co. v. Central of Ga. R. Co.*, 149 Ga. App. 5, 11 (4) (253 SE2d 392) (1979); see also *Second Continental v. Atlanta E-Z Builders,* 237 Ga. App. 304 (514 SE2d 846) (1999). The losses must be directly traceable to the acts of the other party. *Grossberg v. Judson Gilmore Assoc.*, 196 Ga. App. 107, 109 (2) (395 SE2d 592) (1990). Such was done in this case.

"It is the general rule in this state, when the owner of a business seeks to recover lost profits, that recovery can be had only if the business has a proven 'track record' of profitability." *Stern's Gallery of Gifts v. Corp. Property Investors*, 176 Ga. App. 586, 592 (3) (337 SE2d 29) (1985). Here, this was a going concern with a history of profits; therefore, lost profits can be shown by the evidence of past earnings, expenses, and profits with reasonable certainty to enable the jury to calculate the damages. *Radlo of Ga. v. Little*, 129 Ga. App. 530, 534 (2) (199 SE2d 835) (1973); accord *Topvalco, Inc. v. Garner*, 210 Ga. App. 358, 361 (3) (436 SE2d 25) (1993).

While plaintiffs repeatedly objected to the defendants' evidence of damages, plaintiffs never made the specific objection urged before this Court for the first time that expenses must be deducted from earnings to establish lost profits. Plaintiffs waived its objection to the admission of evidence of loss profits without proof of expenses for failure to assert such reason before the trial court, because the objection at trial must be on the specific ground enumerated as error on appeal and not as a new ground raised for the first time on appeal. See *Williams v. State*, 191 Ga. App. 217, 218 (2) (381 SE2d 399)

(1989); *Bryant v. State*, 182 Ga. App. 609, 610 (1) (356 SE2d 698) (1987); see also *Yelverton v. State*, 199 Ga. App. 41, 43-44 (2) (403 SE2d 816) (1991).[1]

In this case, the defendants had an established business with a record of profits after deduction of expenses. Therefore, the trial court did not abuse its discretion in admitting such evidence.

6. Finally, plaintiffs contend that the award of $82,690 against IJL was not authorized by the evidence and was grossly excessive. We do not agree.

The testimony of Jansson, J. C. Armstrong, and Karen Suggs showed that Witty's leaving without two weeks prior notice cost the defendants $165,379.99 over three years in lost commissions from clients that they lost to Witty or others and that there were no expenses attached to such commissions, because the overhead was fixed. Such evidence was sufficient to create a jury question as to damages, which can be determined with reasonable accuracy, and to support the verdict for lost profits. *Gipson v. Phillips*, 232 Ga. App. 235, 236 (501 SE2d 570) (1998); *R. T. Patterson Funeral Home v. Head*, 215 Ga. App. 578, 584-585 (4) (451 SE2d 812) (1994) (physical precedent only); *Crosby v. Spencer*, 207 Ga. App. 487, 488 (1) (428 SE2d 607) (1993); *Bowdish v. Johns Creek Assoc.*, 200 Ga. App. 93, 96 (4) (406 SE2d 502) (1991).

The award of $82,690 was within the range of the evidence before the jury. Absent a showing that the jury verdict was so flagrantly excessive as to shock the conscience, creating a clear implication of bias, prejudice, or gross mistake on the part of the jurors so as to warrant a new trial, the appellate court will not disturb a verdict approved by the trial court. *Morris v. Savannah Valley Realty*, supra at 765 (4); *Wells v. Roberts*, 225 Ga. App. 112, 113 (1) (483 SE2d 339) (1997).

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED AUGUST 10, 1999.

*Jones, Cork & Miller, Hubert C. Lovein, Jr., Sutherland, Asbill & Brennan, Louise B. Duffy*, for appellants.
*Gambrell & Stolz, Irwin W. Stolz, Jr., Robert G. Brazier, Ronald C. Melcher, Seaton D. Purdom*, for appellees.

---

[1] However, the testimony in the transcript was that there were no additional costs related to the commissions lost, because the overhead was fixed.