A01A0362. HOWARD v. ESTATE OF HOWARD et al.
(548 SE2d 48)

SMITH, Presiding Judge.

Sarah Frances Howard, the widow of Hilton William Howard, brought suit against her late husband's estate, Donald Little, the executor of the estate, and Annie M. Phillips, her late husband's daughter from a prior marriage, who was her father's guardian. Howard sought certain monies she claimed were promised to her by her late husband and designated as bequests to her in his will. Cross-motions for summary judgment were filed, and the trial court granted that of the defendants and denied that of Howard. Howard appeals, contending that the trial court misapplied the law, made assumptions of fact unsupported by the record, and erred in construing certain statutes. We find that the trial court correctly applied the

---

Statute of Frauds in ruling that no enforceable contract existed between the decedent and Howard. But we also find that the trial court failed to consider whether clear and convincing evidence existed of the intent of the decedent to make a testamentary gift to Howard of certain funds, and we therefore reverse the judgment and remand to the trial court for such a determination.

The record shows that Howard was married to Truman D. Howard in 1941 and lived with him until his death in 1980. Nine years after Truman Howard died, Howard married Truman's brother, Hilton William Howard, the decedent in this case, a widower whose second wife had died in 1986. Both parties to the marriage had adult children from their previous marriages.

Before he and Sarah Frances married, Hilton William Howard promised to look after her and to provide for her should he die before her. On the day after their marriage, Hilton William Howard changed one of his existing bank accounts to a joint account in both their names. At that time, the account held over $33,000. In 1991, Hilton William Howard executed a will, bequeathing to his wife a life estate in the marital residence and all funds in *the* joint bank account." The residue of the estate was bequeathed to his daughters. In February 1992, Hilton William Howard purchased an annuity in the original amount of $5,000 with funds withdrawn from the joint account, naming Howard as sole beneficiary.

Hilton William Howard's health deteriorated with the onset of Alzheimer's disease. His daughter, Phillips, petitioned for guardianship in August 1994, and, after a hearing at which Howard was present, letters of guardianship were issued on October 3, 1994.

On October 4, 1994, Phillips took control over the property of Hilton William Howard, including his bank accounts. In so doing, she closed the joint account and transferred the funds to a guardianship account in her name. At that time, the account held over $41,500. Phillips assisted Howard in opening her own bank account with $5,000 given to her by Hilton William Howard. Phillips also ascertained that Howard had contributed only $400 to the joint account. She then wrote a check, as guardian, to Howard for that amount, which Howard deposited in her own account.

Phillips learned of the annuity after conducting an inventory of her ward's property. On April 20, 1995, she filed a petition in the probate court seeking permission to liquidate the annuity so that the funds could be placed in a federally insured account, as then required by law. Permission was granted, and Phillips withdrew the funds from the annuity and placed them into a bank certificate of deposit in her name as guardian.

Hilton William Howard died on June 26, 1996. The will was duly probated, Phillips submitted a final return showing she had turned

over all remaining funds to the executor, and letters of dismission were issued to Phillips on January 3, 1997.

Howard maintains her life estate in the marital residence. But since no joint account was in existence at the time of Hilton William Howard's death, the specific bequest to Howard of funds in *the* joint account" was not honored. The annuity, of course, was no longer in existence.

Howard filed this suit in the superior court, seeking recovery of the proceeds of the annuity and an amount equal to the funds in the joint account at the time it was taken over by Phillips, as well as attorney fees and expenses. She alleged that Phillips had acted improperly as guardian because she was also a residuary legatee under the will. She argued that because adequate funds existed in the estate without invading the funds in the joint account, Phillips's actions were taken to benefit the residuary legatees.[1] She also alleged that the actions taken by Phillips amounted to conversion or breach of contract. Howard appealed the superior court's grant of summary judgment to the defendants to the Supreme Court of Georgia, which transferred the appeal to this court, finding that because no will construction was required for resolution of the issues presented and the only relief sought was money damages, this court had jurisdiction.

1. Howard contends the trial court erred in granting summary judgment to appellees by applying law inconsistent with the factual circumstances of the case. This enumeration refers specifically to the trial court's application of the Statute of Frauds, codified at OCGA § 13-5-30, in ruling that no breach of contract existed. The court ruled that any contract between the decedent and Howard was made in consideration of marriage and therefore required to be in writing. Since no writing was shown, any such contract was unenforceable.

Howard argues that the cases interpreting that statute and relied upon by the trial court involved instances in which a mere promise was made and specific performance would be required to enforce the contract. She maintains that, in this case, the promises were memorialized in a will executed after a joint account was created and before an annuity was acquired. She argues that the promises therefore had been fulfilled, removing the oral contract from the Statute of Frauds. Howard maintains that Hilton William Howard could have changed his will when he was competent to do so but did not. She argues that when he was declared incompetent, his will became inviolate, as did his intent, as expressed in his actions.

---

[1] Howard also alleged that a car given to her by the decedent was taken improperly by the guardian, but this claim was abandoned at the hearing on the motion for summary judgment.

This argument was not raised below, and we therefore cannot consider it. It is well established that issues raised for the first time on appeal may not be considered. *Busbee v. Chrysler Corp.*, 240 Ga. App. 664, 666 (524 SE2d 539) (1999). Moreover, the contract itself must be in writing; a subsequent writing evincing intent will not suffice, particularly when that writing itself could have been changed by the decedent.

> The part performance referred to in the Code, . . . as forming an exception to the requirements of [OCGA § 13-5-30], means part performance of the contract. The doing of an independent thing, even though the act would not have been done but for the contract, is not sufficient. The part performance shown must be consistent with the presence of a contract and inconsistent with the lack of a contract.

(Citations and punctuation omitted.) *R. T. Patterson Funeral Home v. Head*, 215 Ga. App. 578, 583 (1) (b) (451 SE2d 812) (1994) (physical precedent only).[2] It is clear that the "writings" here do not satisfy those requirements. The trial court correctly applied the Statute of Frauds.

2. Howard also maintains that the trial court erred in making assumptions of fact not supported by the record. In this enumeration, Howard argues that the trial court did not consider that Phillips's actions as guardian unjustly enriched the residuum of the estate, to her benefit as a legatee.

But Phillips stated in her affidavit, which was uncontradicted, that she was not aware of her status as a legatee under her father's will until after his death. Her expenditures on behalf of her ward were entirely appropriate. As to Phillips's actions, it was her duty, as the guardian of Hilton William Howard, to provide for his support and care and the support and care of those dependent upon him. OCGA § 29-5-5. Howard does not dispute that the funds from the joint account were expended for the care of the decedent, as well as for her own support and care. The probate court approved Phillips's actions by approving the annual returns filed by Phillips.[3]

Although specific bequests existed in her husband's will, these could be honored only if the property bequeathed was in existence at the time of his death. "A legacy . . . is adeemed or destroyed . . .

---

[2] Although *Head* is a physical precedent only, it has been cited with approval numerous times. See, e.g., *James v. Safari Enterprises*, 244 Ga. App. 813, 814 (537 SE2d 103) (2000); *Witty v. McNeal Agency*, 239 Ga. App. 554, 563 (6) (521 SE2d 619) (1999).

[3] OCGA § 29-2-44 (c) provides, in pertinent part, that once the probate judge orders the return to be recorded, "[t]he return thus allowed and recorded shall be prima-facie evidence in favor of the guardian of its correctness."

when the testator . . . places it out of the power of the executor to deliver over the legacy." OCGA § 53-2-105. If no joint account or annuity was in existence at the time of Hilton William Howard's death, it was not within the power of the executor of his estate to deliver them. And Howard did not contest the will or demand the property at the time of the testator's death.

3. Howard next claims that Phillips converted the annuity and the funds in the joint account. "The tort of conversion involves an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." (Citation omitted.) *Parker v. Kennon*, 242 Ga. App. 627, 630 (2) (530 SE2d 527) (2000). Phillips's action in liquidating the annuity was expressly approved, in advance, by the trial court. It cannot have been a conversion, since it was authorized.

Phillips's actions as guardian in closing the joint account and placing the funds in a guardianship account present a more complicated question. Phillips was authorized under OCGA §§ 29-2-2 and 29-2-3 to take such actions. Although those Code sections provide that approval of the probate court is necessary to invade the corpus of the estate, it is well established that the probate court may "approve" such action by ratifying and approving annual returns. *Shipp v. McCowen*, 147 Ga. 711, 715 (95 SE 251) (1918); *Bailey v. McElroy*, 61 Ga. App. 367, 368 (6 SE2d 140) (1939). Compare *Hayes v. Clark*, 242 Ga. App. 411, 412-413 (2) (530 SE2d 38) (2000) (when corpus expended for care and maintenance of ward, guardian could have obtained approval from probate court via prior order or filing annual returns). The probate court in this case approved Phillips's annual returns.

Nevertheless, the appointment of a guardian did not necessarily terminate the joint tenancy and destroy the survivorship right possessed by Howard. *Moore v. Self*, 222 Ga. App. 71, 72-73 (1) (473 SE2d 507) (1996). Howard's authority to withdraw funds from a joint account does not equate to "ownership" of those funds. "A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." OCGA § 7-1-812 (a). Howard clearly had the right to withdraw funds from the joint account, but because she admitted she contributed only $400 to the joint account, she did not "own" the funds unless "clear and convincing evidence of a different intent" existed. Id. Howard was repaid $400 by Phillips, undoubtedly for the purpose of ensuring that ownership of the entire joint account was in the ward. And ordinarily, repayment of Howard's contribution to the account

would have accomplished precisely that.

But here, the $400 repayment may or may not have accomplished this end. A guardian stands in the ward's shoes in many respects and is empowered to act for the ward. But a guardian is not authorized to change the ward's will. A will may be changed at any time up to the testator's death. But Hilton William Howard lost the capacity to change his will when he was declared incompetent. The bequest in Hilton William Howard's will was therefore, in a sense, "inviolate," as argued by Howard.

The trial court never considered whether the will, which made a specific bequest to Howard of "*the* joint account," constituted clear and convincing evidence of a "contrary intent" — that Hilton William Howard fully intended to make a testamentary gift to his wife of the funds in the joint account. If so, the funds in the joint account belonged to Howard, and Phillips's appropriation of them as guardian was contrary to that intent and therefore a conversion.

Regardless of Phillips's knowledge, or lack thereof, of the terms of the will at the time she closed the joint account, when she gained such knowledge it was not too late to carry out the wishes of the testator. The resolution of this issue therefore depends upon a determination of whether the specific bequest in the will constituted clear and convincing evidence that Hilton William Howard intended to gift his wife with ownership of the joint account. Because the trial court did not address this determinative issue, which was raised below, we remand this case to the trial court for its resolution.

*Judgment reversed and remanded. Barnes and Phipps, JJ., concur.*

DECIDED APRIL 19, 2001.

*Douglas D. Middleton, Max D. Kaley,* for appellant.
*Hawkins & Parnell, Michael W. Kitchens, Moore, Ingram, Johnson & Steele, Melissa W. Gilbert, Jean E. Johnson, Jr.,* for appellees.