A04A0164. HARPER v. HARPER et al.

(600 SE2d 659)

RUFFIN, Presiding Judge.

Denver Harper died, leaving the bulk of his estate to his son, Russell Harper, and disinheriting another son, Travis Harper.[1] Travis sued the estate, seeking to enforce his father's alleged agreement to leave him a portion of the estate in exchange for services he rendered to his father during his father's life. In the alternative, Travis sought to recover the value of his services under quantum meruit. Russell, individually and as executor of his father's estate, moved for summary judgment, which the trial court granted. This appeal ensued. For reasons that follow, we affirm.

In reviewing a grant of summary judgment, we apply a de novo standard, and we view the evidence and all reasonable inferences and

---

[12] See *McCulligh v. State*, 169 Ga. App. 717, 719 (1) (314 SE2d 724) (1984).

[13] See id.

[1] The father also disinherited a third son, Emmett Harper, who is not a party to this action.

conclusions therefrom in a light most favorable to the nonmovant.[2] Viewed in this light, the record demonstrates that, while living in Florida, the father accumulated approximately 20-25 rental properties. In 1989, the father suffered a heart attack and was subsequently confined to a wheelchair.

After the heart attack, Travis began working for his father, managing the properties. According to affidavits filed by Travis and various family members, the work was extensive and required Travis' efforts seven days a week. In addition to maintaining, repairing, and collecting rent money for the properties, Travis also helped his father with personal matters such as doctors' appointments and grocery shopping. Although the father paid Travis $250-$300 per week, Travis maintains that this compensation was insufficient. Travis alleges that in 1989 or 1990, he reached an agreement with his father that the father would "take care of Travis by leaving all or substantially all of [the father's] property to Travis in [the father's] will."

The father executed a will in November 1998 in which he left the majority of his estate equally to Travis and Russell. In March 1999, however, the father executed a new will in which he left the bulk of his estate solely to Russell. The will specified that the father "intentionally omitted [his] son[ ] . . . TRAVIS R. HARPER, as a [beneficiary] of [his] estate and from this Will." The father died in November 1999, and Russell was named executor of the estate.[3] In this capacity, Russell filed suit in Florida to quiet title to four parcels of real property that Travis allegedly had wrongfully transferred to himself. Russell also claimed that Travis had been unjustly enriched by keeping rent due the estate. The parties ultimately settled the claim in February 2002, with Travis agreeing to pay the estate $15,000 and executing a promissory note in the amount of $43,000 "as rent for the . . . property."

Shortly before settling the Florida lawsuit, Travis instituted an action in Georgia seeking to enforce a contract he allegedly reached with his father in which Travis would be compensated through the father's will for work he performed on the father's behalf. Russell answered, asserting that the contract action was governed by Florida law and that any such agreement to create a will was oral and thus invalid. Travis then amended the complaint to include a claim for quantum meruit.

Russell subsequently moved for summary judgment, which the trial court granted. Specifically, the trial court found that, under

---

[2] See *Miller v. Miller*, 262 Ga. App. 546 (586 SE2d 36) (2003).

[3] Travis challenged the March 1999 will, which was found to be valid by the Supreme Court. See *Harper v. Harper*, 274 Ga. 542 (554 SE2d 454) (2001).

Florida law, an oral agreement to create a will is invalid and thus not enforceable in Georgia. With respect to the quantum meruit claim, the trial court concluded that it was a compulsory counterclaim, which should have been brought as part of the quiet title action in Florida, and that Travis' failure to raise the issue during the prior action barred his current claim. On appeal, Travis argues that the trial court erred in finding that the agreement to make the will was not valid and enforceable. Travis also asserts that the court erred in concluding that his claim for quantum meruit is barred.

1. First, we address Travis' contention that the trial court erred in finding that his claim for quantum meruit was barred based on his failure to file it as a counterclaim in the Florida quiet title suit. Before we address this argument, we must determine whether Georgia or Florida law applies. Both parties assert that Florida's counterclaim rule is virtually the same as Georgia's statute.[4] However, as the rules are not identical, it is incumbent upon this Court to determine which rule of law applies.

"The rule of lex fori dictates that Georgia courts will apply Georgia law governing procedural or remedial matters."[5] "Procedural law is that law which prescribes the methods of enforcement of rights, duties, and obligations."[6] OCGA § 9-11-13 (a), which governs compulsory counterclaims in Georgia, sets forth the method for bringing such claim and thus is procedural in nature. It follows that Georgia law applies.

Under Georgia law, "if a claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, such claim must be asserted as a compulsory counterclaim."[7] "The broad test to be applied in determining whether a counterclaim is compulsory is whether a logical relationship exists between the respective claims asserted by the opposing parties."[8] In making this determination, we look to see whether judicial economy and fairness dictate that all the issues be resolved in one lawsuit.[9]

Here, we agree with the trial court that Travis' quantum meruit claim shares a logical connection with the quiet title action in Florida such that his failure to raise the claim in the prior suit bars our consideration of the issue. The logical connection is that both suits

---

[4] Compare OCGA § 9-11-13 (a) with Florida Rules of Civil Procedure § 1.170 (a).

[5] *Continental Ins. Co. v. Equity &c. Trust*, 255 Ga. App. 445 (565 SE2d 603) (2002).

[6] *Polito v. Holland*, 258 Ga. 54, 55 (3) (365 SE2d 273) (1988).

[7] (Punctuation omitted.) *Aycock v. Calk*, 228 Ga. App. 172, 174 (491 SE2d 383) (1997) (citing OCGA § 9-11-13 (a)).

[8] (Punctuation omitted.) *Tronitec, Inc. v. Shealy*, 249 Ga. App. 442, 445 (2) (547 SE2d 749) (2001).

[9] See *Ideal Leasing Svcs. v. Whitfield County*, 254 Ga. App. 397, 398 (562 SE2d 790) (2002).

involve Travis' alleged entitlement to a portion of the estate. If, as Travis contends, he was entitled to money from the estate as payment for services rendered, that issue certainly could have and should have been raised in the prior suit to offset any claim that he had been unjustly enriched by keeping rent money.[10] And judicial economy is not served by allowing Travis to parse out his claims against the estate in such manner. Thus, the trial court did not err in granting Russell's motion for summary judgment on this basis.[11]

2. We next address whether the trial court erred in finding that an oral agreement to make a will was invalid. Arguably, our analysis in Division 1 is dispositive of this issue. Although the trial court did not treat the contract claim as a compulsory counterclaim, we see no reason it should be treated differently than Travis' quantum meruit claim, such that his failure to raise it in the prior title claim should bar his pursuit of the matter in Georgia.[12]

Assuming, for the sake of argument, that the contract claim is somehow different in nature from the quantum meruit claim, the trial court correctly found that such action could not be pursued in Georgia. As any agreement between Travis and his father was reached in Florida, the parties concede that the substantive provisions are governed by Florida law.[13] Under Florida law, "[n]o agreement to make a will . . . [or] not to revoke a will . . . shall be binding or enforceable unless the agreement is in writing and signed by the agreeing party in the presence of two attesting witnesses."[14] Based on this provision, the trial court found the oral agreement between Travis and his father to be invalid.

Travis contends that he should nonetheless be able to pursue his claim in Georgia, arguing that the issue is whether the agreement is *enforceable*, not whether the agreement is *valid*. According to Travis, the enforceability of the contract is procedural and thus is governed by Georgia law. Travis further asserts that an oral contract to make a will entered before 1998 is enforceable in Georgia. Thus, Travis reasons, he should be able to maintain his claim in Georgia notwithstanding the fact that it stemmed from an oral agreement.

---

[10] *Tronitec,* supra.

[11] See *Birdsong v. Enforcer Products,* 235 Ga. App. 132, 133 (2) (508 SE2d 769) (1998).

[12] See id.

[13] See *Convergys Corp. v. Keener,* 276 Ga. 808, 811, n. 1 (582 SE2d 84) (2003).

[14] Fla. Stat. Ann. § 732.701 (1).

Assuming that enforceability is a procedural rather than a substantive matter, we still disagree with Travis' reasoning. Although the statute at issue describes an oral agreement to make a will as "unenforceable," such an agreement has also been called a "nullity."[15] The word nullity connotes invalidity.[16] And the validity of a contract is a substantive matter.[17]

We note that Florida courts have not been entirely consistent in treating this issue as a substantive rather than procedural matter.[18] Notwithstanding this inconsistency, we will not allow Travis to pursue his claim here. It is clear that Travis' contract claim is meritless in Florida, the state whose laws govern this matter. And we see no reason to permit him to resuscitate such a meritless claim by bringing it in Georgia. Indeed, permitting such action would encourage the worst sort of forum shopping and unnecessarily clog Georgia's courts.

In the same enumeration of error, Travis claims that a jury issue exists as to whether the oral agreement was reduced to writing as evidenced by the 1998 will in which the father left approximately half of his estate to Travis. According to Travis, "Florida law has held that the terms of a will may be sufficient to establish that the execution of the will was predicated upon a contract." We find this argument unavailing.

Initially, we note that the record does not indicate that Travis raised this argument before the trial court, and we will not consider arguments raised for the first time on appeal.[19] Even if Travis had raised the argument below, it is unlikely he would have prevailed. In the case cited by Travis, which involves a joint will, the Florida court found that "[w]hile the act of making a joint will, standing alone, is not in itself evidence of a contract, the terms of such will may disclose so clearly that it is the product of a contract between the parties that the will itself is sufficient evidence to establish a contract."[20] Here, Travis fails to point to any terms in the father's 1998 will suggesting that it stemmed from a contract between the father and Travis, and we do not see any language in the document that supports such conclusion. Accordingly, this argument lacks merit, and the trial

---

[15] See *Silianoff v. Silianoff*, 399 S2d 462, 464 (Fla. App. 1981).

[16] See *Pitts v. Pastore*, 561 S2d 297 (Fla. App. 1990) (comparing the phrases "void," "void ab initio," "invalid," and "nullity").

[17] See *Wingold v. Horowitz*, 292 S2d 585, 586 (Fla. 1974).

[18] See *First Gulf &c. Trust Co. v. Grubaugh*, 330 S2d 205 (Fla. App. 1976).

[19] See *Howard v. Estate of Howard*, 249 Ga. App. 287, 290 (1) (548 SE2d 48) (2001).

[20] *Weiss v. Storm*, 126 S2d 295, 298 (Fla. App. 1961); see also *In re Estate of Rowland*, 504 S2d 543, 545 (Fla. App. 1987).

court did not err in granting summary judgment on Travis' contract claim.

*Judgment affirmed. Eldridge and Adams, JJ., concur.*

DECIDED MAY 24, 2004.

*Alton M. Adams*, for appellant.

*Sanders & Smith, Janney E. Sanders, Joshua D. Huckaby*, for appellees.