**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 20, 2014**

# In the Court of Appeals of Georgia

A14A1379. SHIRLEY v. SAILORS et al.

ANDREWS, Presiding Judge.

A. D. Shirley, Sr., a beneficiary under the wills of Otha and Marguerite Bennett, filed proceedings in the probate court against Dorothy Sailors, the executrix under the wills, seeking a settlement of accounts, and alleging that Sailors acted as an executor de son tort, and converted money from the estates. The probate court issued a decision in favor of Shirley, and Sailors appealed to the superior court. In the present appeal, Shirley claims the superior court erred by granting motions for partial summary judgment in favor of Sailors on the de son tort and conversion issues, and by denying his motion for partial summary judgment. For the following reasons, we affirm in part and reverse in part.

Otha Bennett died testate on August 25, 2005 at the age of 87 leaving his entire estate to his widow, Marguerite Bennett, who died testate on May 21, 2007 at the age of 92. In August 2007, the Probate Court of Banks County issued letters testamentary to Sailors, as executrix under both wills, and the wills were probated in solemn form. In July 2008, Shirley, the residuary beneficiary in Marguerite's will, cited Sailors, as executrix of Marguerite's estate, to appear before the probate court for a settlement of accounts. In October 2008, Shirley filed a motion in Otha's estate and Marguerite's estate asking the probate court to declare Sailors to be an executor de son tort pursuant to OCGA § 53-6-2, and alleging that Sailors converted money from the estates. In April 2011, the probate court conducted a hearing on the settlement of accounts and the motion. After hearing evidence, the probate court issued a final order finding that Sailors breached her fiduciary duties as an executrix of the estates; that Sailors acted as an executor de son tort; and that Sailors converted money from the estates which Shirley would have received as a beneficiary under Marguerite's will. The probate court ordered that Shirley recover from Sailors as settlement of Marguerite's estate the amount of $749,780.78 (including penalties pursuant to OCGA § 53-6-2) plus interest.

2

Sailors (as executrix in both estates and individually) appealed from the probate court decision to the Superior Court of Banks County. OCGA §§ 5-3-2 (a); 5-3-29. In the superior court, Sailors filed two motions: (1) a motion for partial summary judgment on Shirley's motion to declare that Sailors acted as an executor de son tort pursuant to OCGA § 53-6-2; and (2) a motion for partial summary judgment to determine ownership of all joint accounts, savings accounts, and certificates of deposit, as joint tenants with right of survivorship. Shirley filed a cross-motion for partial summary judgment on the issue of ownership of joint accounts or certificates of deposit.

1. The superior court correctly granted partial summary judgment in favor of Sailors on Shirley's motion asking that Sailors be deemed an executor de son tort for actions she took prior to being appointed executrix of the estates at issue.

Under OCGA § 53-6-2,

> [a]ny person who, without authority of law, wrongfully intermeddles with or converts the personalty of a decedent whose estate is unrepresented shall be deemed an executor de son tort and as such shall be liable to the creditors and heirs or beneficiaries of the estate for double the value of the property so possessed and converted.

3

The double liability is a penalty imposed on an executor de son tort (an executor of his own wrong) for converting property from a decedent's unrepresented estate. *Mathews v. DeFoor*, 172 Ga. 318, 318 (158 SE 7) (1931). But where a person

> renders himself liable as an executor [of] his own wrong, but is then appointed administrator, and duly qualifies as such, he can not, in a suit thereafter brought, be held liable as an executor [of] his own wrong on account of such prior conduct; but he becomes liable for the proper administration of the estate as a lawful administrator.

Id. at 319. Because Sailors was subsequently appointed executrix of both estates at issue, she cannot be held liable under OCGA § 53-6-2 as an executor de son tort for alleged prior wrongful conduct. Id. But this does not preclude Shirley's separate claim that Sailors wrongfully obtained or held money in various accounts that belonged to the estates, and that she breached her fiduciary duties as executrix by failing to recover this property for the estates. See *Greenway v. Hamilton*, 280 Ga. 652 (631 SE2d 689) (2006); *In re Estate of Knapp*, 326 Ga. App. 486, 489-490 (756 SE2d 716) (2014). Although the superior court cited other reasons for its grant of partial summary judgment in favor of Sailors on the issue of whether she acted as an executor de son tort, we affirm under the right for any reason rule. *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002).

4

2. The superior court also granted Sailors's motion for partial summary judgment on the issue of the ownership of joint accounts and certificates of deposit with the right of survivorship, and denied Shirley's cross-motion for partial summary judgment on this issue. Essentially, the issue was whether money in various bank accounts and certificates of deposit, originally funded by the Bennetts as joint accounts with right of survivorship in the name of the Bennetts and Sailors, passed outside the decedents' estates to Sailors, individually, pursuant to the presumption set forth in OCGA § 7-1-813 (a).

It is undisputed that in 1999 and 2000, Otha and Marguerite approached Sailors (Otha's niece) and sought her assistance with handling their finances. Otha and Marguerite, along with Sailors, went to a bank where Otha did business, and Otha opened three new joint accounts with right of survivorship; placed existing bank accounts and certificates of deposit owned by Otha and Marguerite into the three accounts; and put each account in all three names – Otha Newton Bennett, Marguerite Bennet, and Dorothy A. Sailors. The bank employee who knew Otha from prior business at the bank, and assisted in opening the new accounts, testified that Otha conducted all the business and told her to open the joint accounts. Funds from these

5

joint accounts were eventually used to purchase certificates of deposit also jointly held in the names of the Bennetts and Sailors.

In February 2001, Otha and Marguerite executed separate wills (both naming Sailors as executrix) and executed separate, identical powers of attorney. Otha's will left all of his estate to his surviving wife, Marguerite, and contained a residuary bequest to Shirley. Similarly, Marguerite's will left all of her estate to Otha (if he survived her) and contained a residuary bequest to Shirley. Both wills contained a provision recognizing the effect of existing joint accounts and stating:

> All bonds, bank accounts, savings and loan accounts and other similar property I may own at the time of my death in the name of myself and any other person, which are in terms payable on or after my death to such person, shall be the sole property of such person, and my Execut[rix] shall make no claim against such person on account thereof.

The powers of attorney executed by Otha and Marguerite both named Sailors as their agent and gave her general financial powers to act for their benefit by managing their estates and affairs, including the power

> [t]o make deposits or investments in, or withdrawals from, any account, holding or interest which I may own or hereafter have, or be entitled to, in any banking, trust or investment institution, including postal savings, depository office, credit unions, savings and loan associations and similar institutions, to exercise any right, option or privileges pertaining thereto; and to open or establish accounts, holdings or interest of whatever kind or nature, with such institution, in my name or in my said

6

[agent's] name or in both our names jointly, either with or without right of survivorship.

From early 2001 until the Bennetts died, Sailors visited Otha and Marguerite three to four times a week, drove them to appointments in her car, bought their groceries, paid their bills, took them to the doctor, and essentially acted as their full-time care giver, in addition to managing their finances, funds in accounts, and certificates of deposit, The record shows that, during this period, Sailors made numerous financial decisions for the Bennetts with respect to funds in the original joint accounts and certificates of deposit. As a joint account holder with the Bennetts, or pursuant to power of attorney, Sailors withdrew funds on numerous occasions from the original joint accounts and certificates of deposit and transferred the funds to other accounts or certificates of deposit paying higher interest rates. Sailors often made these transfers into accounts or certificates of deposit in her name only, or in her name and her husband's name.[1] Evidence showed that, with some exceptions,[2]

---

[1] Sailors testified that she placed her husband's name on the accounts so that, if she became disabled, he could give the accounts to another relative of Otha's to use the funds for care of the Bennetts.

[2] There was evidence that Sailors paid herself as much as $500.00 per month for her care of the Bennetts and financial management, and that she used funds to repair her car, and remove a tree at her home.

Sailors used the funds in all the accounts for the benefit of Otha and Marguerite during their lives, regardless of whether the accounts or certificates of deposit were jointly in her name with one or both of the Bennetts, or solely in her name or with her husband. There was evidence that the Bennetts gave Sailors authority to place these funds in the various accounts and certificates of deposit she established, and Sailors testified that Otha told her on numerous occasions that, what was left of the funds after she took care of them for life, would belong to her.

When Otha died in August 2005, and when Marguerite died in May 2007, funds existed in these various accounts or certificates of deposit that were solely in Sailors's name (or in the names of Sailors and her husband).[3]

Under OCGA § 7-1-813 (a),

> [s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent, unless there is clear and convincing evidence of a different intention at the time the account is created. If there are two or more surviving parties, the respective ownership of each during his lifetime shall be in proportion to his previous ownership interests under Code Section 7-1-812, augmented by an equal share for each survivor of any interest the decedent may have owned in the account immediately before

---

[3] The superior court calculated that, when Sailors started managing the Bennetts's money, their joint accounts totaled about $374,000.00, and at Marguerite's death, the funds in various accounts traceable to the original joint funds was about $419,000.00.

8

his death; and the right of survivorship continues between the surviving parties.

As provided in OCGA § 7-1-812 (a),

> A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.

Accordingly, when the Bennetts established and wholly funded the original joint accounts and certificates of deposit (held jointly with Sailors, who furnished no money), this gave rise to a presumption that funds remaining in the joint accounts after the Bennetts died belonged to Sailors and did not become part of the decedents' estates. OCGA § 7-1-813 (a). Moreover, under these provisions, Otha and Marguerite each owned half of the funds in the joint accounts during their lifetimes, and, when Otha died in August 2005, Otha's half interest was split equally between the surviving account holders, Marguerite and Sailors. OCGA § 7-1-812 (a).

In applying these principles to funds in the various accounts and certificates of deposit existing when Marguerite died, the superior court found that all of the funds originated from the joint accounts funded by Otha and Marguerite. Because all the funds could be traced to the original joint accounts, the court apparently concluded that the presumption in OCGA § 7-1-813 (a) applied so that funds remaining after

9

Otha and Marguerite died belonged to Sailors as against any claim by the decedents' estates. We find that the superior court erred to the extent it applied the presumption in OCGA § 7-1-813 (a) to funds which Sailors withdrew from the original joint accounts and placed in accounts solely in her name (or with her husband). Although OCGA § 7-1-817 provides that any sums in a joint account may be paid, on request, to any party on the joint account, this does not give a party to the joint account authority to take and exercise control over account funds (owned by another joint party) in which the taking party has no ownership interest. *Parker v. Kennon*, 242 Ga. App. 627, 628-629 (530 SE2d 527) (2000). "[A]uthority to withdraw funds from a joint account does not equate to 'ownership' of those funds." *Howard v. Estate of Howard*, 249 Ga. App. 287, 291 (548 SE2d 48) (2001). To the extent Sailors took funds in excess of her ownership from a joint account containing funds owned by Otha or Marguerite, and placed those funds in an account in her name, this severed the joint account relationship and extinguished the presumption under OCGA § 7-1-813 (a) that the funds belonged to Sailors after the Bennetts died. As to the funds remaining in these accounts, a factual issue exists on Shirley's claim that the funds belong to the decedents' estates. To the extent that any funds remained in joint accounts or certificates of deposit established between Sailors and Otha or

10

Marguerite, the superior court correctly concluded that the presumption in OCGA § 7-1-813 (a) applied; that there was no clear and convincing evidence to the contrary; and that funds remaining in those accounts belonged to Sailors after the Bennetts died.

*Judgment affirmed in part and reversed in part. McFadden, J., concurs. Ray, J., concurs in judgment only.*