## A01A1812. THOMAS v. T & T STRAW, INC.
### (561 SE2d 495)

ANDREWS, Presiding Judge.

Mildred Thomas appeals from the denial of her motion for new trial following the trial court's order finding that her lease agreement with T & T Straw, Inc. (T & T) was binding and not void as against public policy.[1] We agree and affirm.

On December 1, 1997, Thomas leased a one-acre parcel of land to T & T for a twenty-year lease term with the option to renew the lease under the same terms for an additional twenty-year period. The annual rental rate was $600. After entering into the lease, T & T constructed an office on the lot as the headquarters for a pine straw

---

[1] We have considered the motion to dismiss appeal filed by T & T, and it is denied.

processing business. By written correspondence dated February 5, 1999, Thomas notified T & T that beginning January 1, 2000, its new rental rate would be $500 per month rather than the contractual rate of $600 per year. T & T informed Thomas that it intended to abide by the terms of the original lease.

At some point after her February letter, Thomas erected a barricade at an outlet point of T & T's property which prevented its trucks from leaving and entering that area of the property. Following intervention from the local sheriff's department, the barricade was removed. On October 8, 1999, T & T filed a complaint for a temporary restraining order, interlocutory injunction, and declaratory judgment seeking to prevent Thomas from interfering with its use of the subject property and asking that the trial court declare the original lease agreement valid.

The trial court issued a temporary restraining order and, following a bench trial, entered an order finding that the lease was valid and binding upon the parties and not void as against public policy. The order also enjoined Thomas from interfering with or encroaching upon the property and prohibited her from erecting any further barricades on the property. Although the trial court found that Thomas violated Paragraph 15 of the lease agreement[2] thus entitling T & T to attorney fees, it reserved ruling on the matter. Thereafter, Thomas retained new counsel and filed a motion for new trial. Because counsel did not appear or announce at the hearing on the motion, the trial court overruled and denied the motion for new trial and granted T & T attorney fees under the terms of the lease agreement. This appeal followed.

Thomas alleges that the trial court erred in holding that the lease agreement was not against public policy. She argues that the terms of the lease agreement are against public policy and unconscionable because, among other things, T & T has control of the property at the same rental rate for 40 years, has the absolute right to terminate the lease at any time without cause, and has the absolute right to alter, add onto, or improve the property without her consent. Thomas also argues that under the terms of the lease she has no rights or privileges to her property because she cannot assign any interest in the property without T & T's prior consent, or sell without giving T & T the right of first refusal.

Generally, Georgia law recognizes and protects the freedom of parties to contract. *NEC Technologies v. Nelson*, 267 Ga. 390, 396 (4)

---

[2] Under the lease, "In case of collection of any amounts due by one party to the other hereunder or unlawful detainer because of breach of covenants herein, each party agrees to pay to the other, its attorney's fees as provided under the laws of the State of Georgia."

(478 SE2d 769) (1996). This is true even though they may enter into contracts that are unreasonable or which may lead to hardship. Id.

Although Thomas argues otherwise, we cannot say that the lease agreement at issue was unconscionable simply because the terms appear to favor the lessee. See *Imaging Systems Intl. v. Magnetic Resonance Plus*, 227 Ga. App. 641, 644 (1) (490 SE2d 124) (1997) (contracting parties are free to contract to waive numerous and substantial rights absent a public policy interest). "An unconscionable contract is one abhorrent to good morals and conscience. It is one where one of the parties takes a fraudulent advantage of another." (Citation, punctuation and emphasis omitted.) *F. N. Roberts Pest Control Co. v. McDonald*, 132 Ga. App. 257, 260 (3) (208 SE2d 13) (1974). It is an agreement that no sane person not acting under a delusion would make and that no honest person would take advantage of. See id.; *Hall v. Fruehauf Corp.*, 179 Ga. App. 362 (346 SE2d 582) (1986) (physical precedent only).

There has been no showing that Thomas was fraudulently induced into signing the lease agreement, nor that she was delusional or insane at the time the contract was signed. Further, Thomas has failed to provide any argument or authority to demonstrate that the contract terms violate public policy. "It is well established that contracts will not be avoided by the courts as against public policy, except where the case is free from doubt and where an injury to the public interest clearly appears." (Citation and punctuation omitted.) *Hall*, supra at 362.

While courts may look to matters such as the commercial reasonableness of the contract terms, the allocation of risks between the parties, and the purpose and effect of the terms in determining unconscionability, there must be evidence to support such a finding. See *NEC Technologies*, supra at 392 (1). The record here is devoid of any such evidence.

Parties should be entitled to contract on their own terms without the courts saving one side or another from the effects of a bad bargain. See *William J. Cooney, P.C. v. Rowland*, 240 Ga. App. 703, 705 (524 SE2d 730) (1999). The trial court did not err in holding that because the lease contract was neither unconscionable nor violative of public policy, it was binding upon the parties.

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

DECIDED MARCH 12, 2002.

*Ellis R. Garnett*, for appellant.
*Douglas C. Rogers*, for appellee.