307 Ga. 321
FINAL COPY

S18G1326. LANGLEY v. MP SPRING LAKE, LLC.

BETHEL, Justice.

In *Langley v. MP Spring Lake, LLC*, 345 Ga. App. 739 (813 SE2d 441) (2018), the Court of Appeals affirmed the trial court's grant of summary judgment in favor of MP Spring Lake ("Spring Lake") on two premises liability tort claims brought by Pamela Langley. Langley petitioned for certiorari, which we granted, posing the following two questions: (1) Does the "Limitations on Actions" provision of Langley's lease contract apply to her premises liability tort action against MP Spring Lake, LLC?; and (2) If so, is that provision enforceable?

For the reasons explained below, we conclude that the provision is not applicable to Langley's premises liability tort action against Spring Lake. We therefore reverse the judgment of the Court of Appeals and remand the case for further proceedings. In light of that conclusion, we do not reach the second question.

As set forth by the Court of Appeals in a light most favorable to Langley, the facts of this case are as follows:

> [Langley] filed suit against Spring Lake on March 3, 2016, alleging that on March 3, 2014, while a lawful tenant of Spring Lake Apartments in Morrow, Georgia, she fell in a common area of the complex when her foot got caught and slid on a crumbling portion of curb. She later made claims of negligence and negligence per se due to Spring Lake's alleged failure to repair the curb despite being aware of its disrepair.
>
> Spring Lake asserted, as one of its defenses, that Langley's claims were barred by a contractual limitation period contained within her lease. Spring Lake then moved for summary judgment on this basis, arguing that, because Langley's lease contained a one-year limitation period for legal actions and she filed her complaint two years after the injury occurred, her claim was time-barred. More specifically, Spring Lake argued that because Langley's claims accrued on March 3, 2014, when she fell, she was required by her lease to file suit on or before March 3, 2015.
>
> The lease at issue was entered into on May 7, 2013, with an effective period of June 5, 2013, to June 4, 2014. In the thirty-third paragraph of the lease, the agreement provides:
>
>> Limitation on Actions. To the extent allowed by law, Resident also agrees and understands that any legal action against Management or Owner must be instituted within one year of the date any claim or cause of action arises and that any action filed after one year from such date shall be time barred as a matter of law [the "Limitation Provision"].

2

In response to Spring Lake's motion for summary judgment, Langley argued that (1) the [Limitation Provision] was too ambiguous to be enforceable; (2) the [Limitation Provision] was only applicable to actions that arose from the contract itself, not an unrelated personal-injury action; (3) Spring Lake was estopped from relying upon the [Limitation Provision] due to statements made by representatives of Spring Lake's insurance carrier both before and after the expiration of the one-year period; and (4) it was fundamentally unfair to enforce the [Limitation Provision] because neither party was even aware of its existence.

The trial court rejected Langley's arguments and granted Spring Lake's motion for summary judgment, concluding that the provision was enforceable. Specifically, the court found that Langley's personal-injury claims were time-barred because she filed suit after the expiration of the one-year contractual limitation period.

(Footnote omitted.) *Langley*, 345 Ga. App. at 739-740.

The Court of Appeals affirmed the trial court's grant of summary judgment, holding that the Limitation Provision applied to Langley's premises liability tort action. *Langley*, 345 Ga. App. at 743. The Court of Appeals determined that the language of the Limitation Provision was clear and unambiguous, which foreclosed it being read, as Langley urged, to apply only to actions arising from the lease itself. In reaching this decision, the Court of Appeals

3

focused on the phrase "any legal action," summarily concluding that, "[a]lthough the language of the [Limitation Provision] is broad and does not explicitly specify that it includes personal injury actions, it nevertheless encompasses *any legal action* Langley might have instituted against the owner or management of her apartment complex." (Footnote omitted; emphasis in original.) Id. at 743.

In support of this conclusion, the Court of Appeals noted that "contractual-limitation-period clauses are enforceable in Georgia" and that "Langley [pointed] to no supporting authority that holds such provisions are inapplicable to personal-injury actions." (Footnotes omitted.) *Langley*, 345 Ga. App. at 742-743. But in so holding, the Court of Appeals relied upon cases interpreting time-limitation provisions contained in insurance policies, in cases involving claims brought under the policy. See, e.g., *Thornton v. Ga. Farm Bureau Mut. Ins. Co.*, 287 Ga. 379, 380 (1) (695 SE2d 642) (2010) (applying contractual time-limitation provision to suit over denial of coverage under insurance policy); *Rain & Hail Ins. Svcs. v. Vickery*, 274 Ga. App. 424, 425 (1) (618 SE2d 111) (2005) (applying

4

contractual time-limitation provision to suit over insurer's failure to pay insured's claim); *Dailey v. Cotton States Mut. Ins. Co.*, 207 Ga. App. 139, 140 (427 SE2d 109) (1993) (applying contractual time-limitation provision to suit over insurer's failure to investigate insurance claim).

By focusing narrowly on the language of the Limitation Provision without regard to the full context of the lease agreement of which it was a part, the Court of Appeals' analysis failed to address the more fundamental problem at issue. Specifically, the question here is not whether contractual time-limitation provisions are generally enforceable in this State; that question is clearly answered in the affirmative as to claims for breach of contract.[1]

---

[1] Time-limitation clauses, that is, provisions limiting the timeframe in which actions for breach of contract may be brought, have long been enforced in Georgia. See, e.g., *Brown v. Savannah Mut. Ins. Co.*, 24 Ga. 97, 1012 (1858) ("There is no reason why a party may not enter into a covenant, that for an alleged breach of contract, the injured party shall sue within a period less than that fixed by the statute of limitations as a bar."). See also *Rabey Elec. Co. v. Housing Auth. of Savannah*, 190 Ga. App. 89, 90 (2) (378 SE2d 169) (1989) (Enforcing a contractual alteration to the statute of limitation for action on contracts and noting "Georgia courts have permitted parties to contract as to a lesser time limit within which an action may be brought so long as the period fixed be not so unreasonable as to raise a presumption of imposition or undue advantage in some way." (citations and punctuation omitted)).

Rather, the question is whether the Limitation Provision agreed to by the parties in this case, who were at the time creating a landlord-tenant relationship, applies to Langley's premises liability tort claim. For the reasons explained below, we conclude that it does not.

"On appeal, this Court's review of a trial court's construction of a contract is de novo." (Citation omitted.) *Borders v. City of Atlanta*, 298 Ga. 188, 197 (II) (779 SE2d 279) (2015). To begin our inquiry, we invoke the familiar framework of contractual construction, which involves three steps:

> First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

(Citation omitted.) *City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19, 30 (3) (743 SE2d 381) (2013).

"The cardinal rule of contract construction is to ascertain the

6

intention of the parties. . . . When the terms of a contract are clear and unambiguous, the reviewing court looks only to the contract itself to determine the parties' intent." (Citations and punctuation omitted.) *Unified Govt. of Athens-Clarke County v. Stiles Apts., Inc.*, 295 Ga. 829, 832 (764 SE2d 403) (2014); see also OCGA § 13-2-3.

In the face of ambiguity, "we must look to the entirety of the [a]greement to determine the intent of the parties. Indeed, it is axiomatic that contracts must be construed in their entirety and in a manner that permits all of the terms contained therein to be consistent with one another." (Citations and punctuation omitted.) *Sutherlin v. Sutherlin*, 301 Ga. 581, 585 (II) (A) (802 SE2d 204) (2017). Further, where there is ambiguity, the agreement will be construed against the drafter and in favor of the non-drafter. See *Hertz Equip. Rental Corp. v. Evans*, 260 Ga. 532, 533 (397 SE2d 692) (1990) ("Under the statutory rules of contract construction, if a contract is capable of being construed two ways, it will be construed against the preparer and in favor of the non-preparer."); *Winterboer v. Floyd Healthcare Mgmt.*, 334 Ga. App. 97, 103 (778 SE2d 354)

7

(2015) ("[W]hen the construction of a contract is doubtful, the construction that goes most strongly against the drafter of the agreement is to be preferred." (punctuation and footnote omitted)); OCGA § 13-2-2 (5) ("If the construction is doubtful, that which goes most strongly against the party executing the instrument . . . is generally to be preferred[.]"). However, in construing a provision against the drafter, it does not follow that the non-drafter's interpretation automatically controls. See *DIRECTV, Inc. v. Imburgia*, __ U. S. __ (136 SCt 463, 470, 193 LE2d 365) (2015) ("[T]he reach of the canon construing contract language against the drafter must have limits, no matter who the drafter was."); *In re Estate of McKitrick*, 326 Ga. App. 702, 706 (757 SE2d 295) (2014) ("It is true that a construction against the drafter is preferred. OCGA § 13-2-2 (5). But no canon of interpretation is absolute." (citation and punctuation omitted)). See also Restatement (Second) of Contracts § 206 cmt. a (1981) ("[T]he rule [construing contract language against the drafter] does not apply if the non-drafting party's interpretation is unreasonable."). Thus, the interpretation

8

put forward by the non-drafting party must be a reasonable one.

Spring Lake argues that the trial court and the Court of Appeals correctly found the language of the Limitation Provision to be clear and unambiguous and that it applies to all claims brought by Langley against Spring Lake, whether such claims arise from a breach of the lease contract or otherwise. Spring Lake contends that, absent explicit language limiting the reach of the provision to actions on the contract, the Limitation Provision extends to any claim Langley asserts against it. Spring Lake has offered this singular expansive interpretation of the Limitation Provision. By contrast, Langley argues that the Limitation Provision should be construed narrowly, so as to apply only to claims for breach of the lease agreement.

"[W]e generally accept that contractual terms carry their ordinary meanings." *Archer W. Contractors, Ltd. v. Estate of Pitts*, 292 Ga. 219, 224 (2) (735 SE2d 772) (2012). Considered in a vacuum, the text of the Limitation Provision may appear unambiguous. However, our analysis is neither confined to this sole provision nor

9

to the literal meaning of the phrase "any legal action." "[T]he context in which a contractual term appears *always* must be considered in determining the meaning of the term." (Emphasis in original.) Id. See also *Anderson v. Anderson*, 274 Ga. 224, 227 (3) (552 SE2d 801) (2001) ("Words, like people, are judged by the company they keep." (citation and punctuation omitted)). In order to ascertain what claims the parties sought to address in the Limitation Provision, we must read that provision in light of the contract as a whole and in the legal context in which it was created. *Archer,* 292 Ga. at 224 ("Contracts must be construed as a whole, and the whole contract should be looked to in arriving at the construction of any part." (citations and punctuation omitted)).

Here, the seemingly unlimited phrase "any legal action" is found near the end of a contract establishing a lease agreement. This raises the question of whether "any legal action" should be given its literal meaning, or whether the parties intended to limit its application to lawsuits arising from the lease agreement. The conflict between the broad literal meaning of the phrase and the

limited nature of the contract creates uncertainty as to the scope of the Limitation Provision. What is clear, however, is that in the face of this ambiguity, the agreement must be construed against Spring Lake, the drafter, and in favor of Langley, the non-drafter. See *Hertz*, 260 Ga. at 532.

Even so, construction of the agreement against Spring Lake is bound both by reasonableness and our goal of ascertaining the intention of the parties. The contract, titled "Apartment Lease Contract," demonstrates the parties' clear intent to create a landlord-tenant relationship for a one-year term during which Langley agreed to rent a specific apartment "for use as a private residence." See OCGA § 44-7-1 (a) ("The relationship of landlord and tenant is created when the owner of real estate grants to another person, who accepts such grant, the right simply to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor. . . ."). In addition to specifying a number of duties

11

owed by the parties to each other,[2] the lease agreement also invoked a significant body of landlord-tenant law, including a number of duties owed by Spring Lake to Langley that could not be waived by their agreement.  See OCGA § 44-7-2 (b) ("In any . . . lease . . . for the use or rental of real property as a dwelling place, a landlord or a tenant may not waive, assign, transfer, or otherwise avoid any of the rights, duties, or remedies contained in the following provisions of law[, including § 44-7-13]."). Of note to the inquiry before us, the duties imposed by OCGA § 44-7-13 sound only in contract, not in tort, *Colquitt v. Rowland*, 265 Ga. 905, 907 (2) (463 SE2d 491) (1995). Among those duties is the landlord's contractual duty to

---

[2] The forty-two provisions of the six-page lease are divided into various sections, and each section is labeled with a heading, such as "Moving In – General Information," "Special Provisions and 'What If' Clauses," "While You're Living in the Apartment," "Replacements," "Responsibilities of Owner and Resident," "General Clauses," "Security Guidelines for Residents," "When Moving Out," and "Signatures, Originals, and Attachments."  By executing the lease, Langley promised, among other things, to pay rent before or on the first of the month, to purchase personal liability insurance, to dispose of her trash at least once per week, to refrain from burning candles in her apartment, and to replace at her own expense the batteries in smoke detectors located in her apartment. In exchange, Spring Lake promised, among other things, to keep common areas reasonably clean, to maintain fixtures and certain appliances, and to make reasonable repairs.

"keep the premises in repair." OCGA § 44-7-13.

But Langley's claims here were brought in tort. See OCGA § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."). Although her lawsuit notes that she was a tenant at property owned by Spring Lake at the time of her injuries, Langley's lawsuit against Spring Lake is not legally predicated on the landlord-tenant relationship between Langley and Spring Lake. Her tort claim is instead a premises liability claim predicated on Spring Lake's status as a property owner and Langley's status as an invitee on that property. The relationship between an owner and an invitee is separate from the relationship between a landlord and a tenant. Those relationships involve distinct statutory duties — one sounding in tort, the other in contract — even though a person's status as a tenant may also make that person an invitee to the property. See, e.g., *Total Equity Mgmt.*

13

*Corp. v. Demps*, 191 Ga. App. 21, 22 (381 SE2d 51) (1989) (noting that "[tenant] appellees were invitees in their own apartment and in the building's common areas[.]" See also *Johnson v. Green Growth 1, LLC*, 305 Ga. App. 134, 136 (699 SE2d 109) (2010) ("[W]here, as here, the landlord has retained control over common areas of an apartment complex to which tenants and others are allowed access, the landlord has a legal duty under OCGA § 51-3-1 to exercise ordinary care in keeping the common areas safe." (citation and punctuation omitted)).

Given the limited purpose of the lease contract and the legal relationship it created between Langley and Spring Lake, the ultimate question before us becomes apparent: Was the Limitation Provision intended to apply to the conceivable universe of legal claims that may arise between the parties, or is its applicability limited to claims arising from the lease agreement? Due to the nature of the contract, and because we construe the lease against Spring Lake and find that Langley's proposed construction is reasonable, we construe the Limitation Provision to apply only to

claims arising from the contract, and not to Langley's free-standing tort claims.

Construing the lease against Spring Lake forecloses the possibility that the Limitation Provision was intended to apply to any and all possible legal claims that may arise between the parties. It is difficult to believe, for example, that the parties intended the Limitation Provision to apply to tort claims resulting from a traffic accident miles away from the apartment complex between Langley's and the property manager's vehicles, an intentional tort lawsuit against a property manager for punching a tenant, or a shareholder liability suit if Langley happened to be a shareholder in MP Spring Lake, LLC. Instead, when read in the context of the lease agreement, we conclude that the general language "any legal action," in the absence of language specifically encompassing tort claims, is limited to claims arising out of the lease agreement. Here, the lease agreement, like most residential leases, lays out a fairly standard set of rights and obligations of both the landlord and the tenant. Within this context, while it could be argued that the

15

Limitation Provision was intended to apply to claims other than those arising from the lease agreement that Langley might bring against Spring Lake, the canon of construction requiring us to construe the Limitation Provision against Spring Lake moves us toward a more limited reading of the contract so as not to cover Langley's tort claim.

Nothing in the lease agreement suggests that it creates any relationship other than that of landlord and tenant, or that it covers subject matter beyond that relationship or the parties' rights and obligations specified in the lease agreement. This omission suggests that nothing in the lease should be read to apply to, or to curtail, tort claims, or to otherwise speak to legal rights beyond those arising from the lease agreement and the body of law creating contractual duties between landlords and tenants.

Indeed, Spring Lake points to no Georgia case in which a contractual limitation provision has ever been applied to a claim not arising from the underlying contract, and we have found no case from anywhere in the country applying such general limitation

16

language in a residential lease agreement to a free-standing tort claim.[3] In the context of a licensing agreement, a federal court has held that the same limitation language at issue here — "any legal action" — applied only to "those claims that are closely related to the parties' contractual rights and obligations," and thus did not bar unfair competition claims "not dependent on the parties contractual relationship." *RSI Corp. v. Intl. Business Machines Corp.,* No. 5:08-CV-3414 RMW, 2012 WL 3277136, at *5-8 (N.D. Cal. Aug. 9, 2012). See also *College of Notre Dame of Md. v. Morabito Consultants*, 752 A2d 265, 276 (Md. Ct. Spec. App. 2000) (enforcing time-limitation provision in construction contract but noting that "[w]e are not

_____

[3] In a motion for reconsideration, Spring Lake has identified a Court of Appeals case, *McCoury v. Allstate Ins. Co.*, 254 Ga. App. 27 (561 SE2d 169) (2002), which Spring Lake asserts stands for the proposition that a contractual limitation provision applies to extracontractual tort claims. Pretermitting whether *McCoury* was correctly decided, it is not inconsistent with our reasoning here. Although the claim in *McCoury* was a tort, the action for negligent failure to provide adequate coverage for plaintiffs' loss arose from the insurance policy in question. See 254 Ga. App. at 28 ("Although this is not an action for breach of the policy, it is certainly an action brought by the plaintiffs by virtue of their status as policyholders."). Indeed, the *McCoury* majority rejected an argument — similar to the one Spring Lake has made here — that the limitation provision would apply to litigation "completely unrelated to any insurance policy containing the limiting clause." (Punctuation omitted.) Id. at 28 n.3.

17

addressing claims for damages to person or property sustained by a contracting party"). Some courts outside Georgia have held that differently worded limitation language, and limitation provisions in other types of contracts, reach certain tort claims. See, e.g., *Maxcess, Inc. v. Lucent Techs.*, 433 F3d 1337, 1342 (11th Cir. 2005) (applying Florida law and finding that "the Purchase Agreement clearly covers 'any action or proceeding,' and is not limited to contractual or tort claims [so] . . . the shortened limitations period covers both claims arising in contract law and in tort law"); *Selective Way Ins. Co. v. Glasstech, Inc.*, No. 16-CV-1177, 2018 WL 1871092, at *4 (N.D. Ohio Apr. 19, 2018) (finding that time-limitation provision in service contract applying to any action based upon "breach of obligations" "contemplates all obligations or duties, sounding in tort and contract law" where contract as a whole "refers to limitation of liability regardless of whether the claim is based on breach of contract or tort" (punctuation omitted)). We cannot say that this background law suggests that the Limitation Provision at issue here would be applied to tort claims not arising from the lease agreement.

18

The law establishes a contract claim arising from a breach of Spring Lake's duties under the lease and OCGA § 44-7-13, separate and apart from a premises liability tort claim arising from Spring Lake's duties as a property owner to keep the premises safe under OCGA § 51-3-1. Tort and contract simply provide alternate vehicles (and remedies) through which Spring Lake could be liable to Langley for failing to keep the property in repair. See OCGA § 51-1-1 ("A tort is the unlawful violation of a private legal right other than a mere breach of contract, express or implied. . . .").

We express no opinion as to whether a lease agreement ever *could* be worded and structured so as to provide limitations on the period in which the tenant could bring tort claims against the landlord, and we likewise express no opinion about the extent to which such limitations would be enforceable.[4] Because the best

[4] Georgia law "recognizes and protects the freedom of parties to contract . . . even though [parties] may enter into contracts that are unreasonable or which may lead to hardship." *Thomas v. T & T Straw,* 254 Ga. App. 194, 195 (561 SE2d 495) (2002). Statutes of limitation "serve the legitimate public policy goal of promoting justice and furthering the certainty of time limitations while preventing unfair surprise." *Walker v. Brannan*, 243 Ga. App. 235, 238-239

19

reading of the lease agreement before us suggests that this is not what the parties intended, we need not reach those questions in this case.

Based on the foregoing, we determine that the Court of Appeals erred when it affirmed the trial court's grant of summary judgment in favor of Spring Lake. We therefore reverse the decision of the Court of Appeals and remand the case for further proceedings. In light of our conclusion that the lease provision at issue does not bar Langley's tort suit against Spring Lake, we do not reach the question of whether that provision is enforceable.

*Judgment reversed and case remanded. All the Justices concur, except Melton, C. J., who concurs in judgment only. Peterson, J.,*

---

(533 SE2d 129) (2000). Unlike arbitration provisions, for which there is a statutory provision prohibiting agreements to arbitrate claims "arising out of personal bodily injury or wrongful death based on tort," OCGA § 9-9-2 (c) (10), there is no statutory provision prohibiting parties from contractually shortening periods of limitation for tort claims. At the same time, this Court has recognized that

> [t]he General Assembly has consistently expressed the public policy of this state as one in favor of imposing upon the landlord liability for damages to others from defective construction and failure to keep his premises in repair. The expressed public policy in favor of landlord liability is matched by an equally strong and important public policy in favor of preventing unsafe residential housing.

*Thompson v. Crownover*, 259 Ga. 126, 128 (381 SE2d 283) (1989).

*disqualified.*

DECIDED OCTOBER 21, 2019 – RECONSIDERATION DENIED NOVEMBER 14, 2019.

Certiorari to the Court of Appeals of Georgia — 345 Ga. App. 739.

*Matthew G. Gebhardt; Bondurant, Mixson & Elmore, Naveen Ramachandrappa*, for appellant.

*Freeman Mathis & Gary, Sun S. Choy, Jacob E. Daly, Wes C. Jackson*, for appellee.

*The Blaska Law Firm, Thomas C. Blaska, Thomas C. Blaska II, Dana J. Norman; Speed & King Law, Laura W. Speed; John D. Hadden; McArthur Law Firm, Caleb F. Walker; Janise L. Miller; Kenneth M. Sissel; Alan B. Gordon; Eugene C. Brooks IV; Cole Thaler; Crystal A. Redd; Hall Booth Smith, Mark W. Wortham, Austin Atkinson, Pearson K. Cunningham; Drew, Eckl & Farnham, Hall F. McKinley III, Garret W. Meader; Hawkins Parnell Thackston & Young, Martin A. Levinson; Fowler Hein Passino Cheatwood & Williams, James M. Williams; John J. McDermott; McMickle, Kurey & Branch, Kevin P. Branch, Zach M. Matthews*, amici curiae.