**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 6, 2020**

# In the Court of Appeals of Georgia

A20A1118. SMITH et al. v. ADVENTURE AIR SPORTS KENNESAW, LLC et al.

DILLARD, Presiding Judge.

Noah Edward Smith, along with his parents, Dewayne Smith and Leah Smith, appeal from the trial court's grant of Adventure Air Sports Kennesaw, LLC and Scott Rice's[1] motion to compel arbitration. The Smiths argue that (1) the contract between the parties is unenforceable, (2) the contract was unconscionable, (3) Adventure Air Sports negligently failed to follow its own procedures, and (4) Dewayne and Leah's arguments are separate from Noah's contentions. For the reasons set forth *infra*, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

---

[1] For the sake of simplicity, we refer to Adventure Air Sports Kennesaw, LLC and Scott Rice collectively as "Adventure Air Sports" throughout this opinion.

This Court reviews the grant or denial of a motion to compel arbitration *de novo* to see if the trial court's decision is correct as a matter of law;[2] but we defer to the trial court's factual findings unless they are clearly erroneous.[3] So viewed, the record shows that Adventure Air Sports is an indoor facility that consists of trampolines, foam pits, games, and other amusement activities. And prior to purchasing tickets or participating in facility activities, a patron must execute a contractual waiver, which he or she is given the opportunity to read and sign electronically. To agree to the terms of the contract, the patron must provide his or her name, address, date of birth, email address, and telephone number. The contract provides, in pertinent part, a release of liability as follows:

(1) RELEASE OF LIABILITY: I acknowledge that my or my child(ren)/ward(s)'s use of ADVENTURE AIR SPORTS' facilities and

---

[2] *See Schinazi v. Eden*, 351 Ga. App. 151, 156 (830 SE2d531) (2019) ("[T]his Court reviews the record de novo to determine whether the trial court's denial of the motion to compel arbitration is correct as a matter of law." (punctuation omitted)); *Kindred Nursing Ctrs. Ltd. Partnership v. Chrzanowski*, 338 Ga. App. 708, 708-09 (791 SE2d 601) (2016) (same).

[3] *See Schinazi*, 351 Ga. App. at 156 ("[W]e defer to the trial court's findings of fact upon which its denial was based unless those findings are clearly erroneous."); *Ed Voyles Jeep-Chrysler, Inc. v. Wahls*, 294 Ga. App. 876, 877 (670 SE2d 540) (2008) (explaining that, in context of determining whether a party has waived its right to arbitrate, "the findings upon which the conclusion is based are predicate questions of fact, which may not be overturned unless clearly erroneous").

2

participation in Activities offered by ADVENTURE AIR SPORTS entails known and unknown risks that could result in physical or emotional injury including, but not limited to[,] broken bones, sprained or torn ligaments, paralysis, death, or other bodily injury. I understand that such risks simply cannot be eliminated without jeopardizing the essential qualities of the Activities. Despite all known and unknown risks, I hereby expressly assume all risks associated with participation in the Activities offered by ADVENTURE AIR SPORTS and voluntarily remise, release, acquit, and satisfy and forever discharge ADVENTURE AIR SPORTS and agree to hold it harmless of and from all, and all manner of action and actions or omission(s), cause and cause of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills specialties, covenants, contracts, controversies, agreement, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law or in equity, including, but not limited to, any and all claims which allege negligent acts and/or omissions committed by ADVENTURE AIR SPORTS, whether the action arises out of any damage, loss, personal injury, or death to me or my child(ren)/ward(s) while participating in or as a result of participation in any of the Activities. This Release of Liability, is effective and valid regardless of whether the damages, loss or death is a result of any act or omission on the part of ADVENTURE AIR SPORTS.[4]

---

[4] This portion of the agreement, as with others, requires the signing party to check a small box beside it in acknowledgment.

3

The contract then goes on to provide for arbitration as follows: "Any controversy between the parties hereto involving any claim arising out of or relating to a breach of agreement, shall be submitted to and be settled by final and binding arbitration in Cobb County, Georgia, in accordance with the then current Commercial Arbitration Rules of the American Arbitration Association."

At the end of reviewing the electronic agreement, the patron clicks the "accept" button and receives a system-generated signature certificate that reflects the date and time the contract was executed. A copy of this form is also saved to the Adventure Air Sports computer system and emailed to the patron, at which point entry tickets may be purchased. Importantly, when a patron is a minor, a parent or legal guardian must execute the agreement on the minor's behalf and identify the minor in the contract. And if the parent does not accompany the minor to the facility, prior to being admitted, an employee will check the Adventure Air Sports database for an executed waiver *and* will also check a copy of the signing parent or guardian's driver's license, at which point the electronic waiver is marked as "validated."

On March 31, 2017, a contract was executed on behalf of Noah Smith, who was then 17 years old. It is undisputed that, rather than have one of his parents sign the contract, Noah executed the agreement in his father Dewayne's name without his

4

parents' permission or knowledge. Then, on June 26, 2017, Adventure Air Sports asked Noah to perform trampoline maneuvers to create a promotional marketing video. So, on that day, Noah did not purchase a ticket and was instead paid a small sum as compensation for his time and the use of his image. Tragically, while Noah performed maneuvers on the trampoline, he suffered serious and debilitating injuries, resulting in paralysis caused by an injury to his spinal cord. Dewayne was not with Noah at the facility that day, nor had he ever accompanied his son to Adventure Air Sports. But in the Adventure Air Sports computer system, Noah's waiver was marked as "validated," meaning an employee reviewed a copy of Dewayne's driver's license prior to admitting Noah into the facility.

On April 5, 2019, the Smiths filed suit against Adventure Air Sports and its chief operating officer, Scott Rice, to recover for the injuries Noah sustained. Adventure Air Sports went on to file a motion to dismiss the Smiths' suit and compel arbitration based on the contract executed prior to Noah's use of the trampoline park. The trial court granted Adventure Air Sports's motion, and this appeal by the Smiths follows.

1. For starters, the Smiths argue that the contract is unenforceable because it was executed by a minor.[5] We disagree.

The Smiths are correct that, generally speaking, "the contract of a minor is voidable."[6] But minors may be estopped from voiding contracts when those agreements are induced by fraud and deceit, such as when a false representation is made by a minor as to the minor's age.[7] And while we have never had the opportunity

[5] The Smiths also argue the trial court erred by compelling tort claims to arbitration when it is against the plain language of the contract. But because they did not raise this argument before the trial court, we do not address it on appeal. *See, e.g.*, *Flesch v. Flesch*, 301 Ga. 779, 781 (1) (b) (804 SE2d 67) (2017) (explaining that court will not consider a legal argument advanced for the first time on appeal); *Harper v. Harper*, 267 Ga. App. 553, 557 (2) (600 SE2d 659) (2004) (noting that appellate court will not consider an argument raised for the first time on appeal); *Chiaka v. Rawles*, 240 Ga. App. 792, 796 (4) (525 SE2d 162) (1999) ("This court will not consider arguments neither raised nor ruled on in the trial court and that are asserted for the first time on appeal.").

[6] OCGA § 13-3-20 (a); *see Mrozinski v. Pogue*, 205 Ga. App. 731, 736 (3) (423 SE2d 405) (1992) ("[C]ontracts entered by minors . . . are merely voidable but not void, and . . . the minority of an individual does not in and of itself prohibit that individual from entering a contract."). *See generally Stoudenmire v. HSBC Bank USA*, 333 Ga. App. 374, 375 (776 SE2d 483) (2015) ("A void contract is one that has no effect whatsoever and is incapable of being ratified, while a voidable contract is one that is unenforceable at the election of the injured party.").

[7] *See Zobrist v. Bennison*, 268 Ga. 245, 248 (3) (486 SE2d 815) (1997) ("Waivers or estoppels are not ordinarily . . . imputable against infants, except an estoppel in pais based on fraud and deceit by an infant who has reached an age of discretion when fraud can be imputed against him." (punctuation omitted)); *Brown*

to address a factual situation in which a minor has forged his parent or legal guardian's signature in order to execute a contract and enjoy its benefits, we see no meaningful distinction between this case and those in which a minor has lied about his or her age.[8] Indeed, estoppels do not apply to or affect minors, "except in cases

---

*v. Anderson*, 186 Ga. 220, 220 (1) (197 SE 761) (1938) (same); *Carney v. Southland Loan Co.*, 92 Ga. App. 559, 561 (1) (88 SE2d 805) (1955) ("While ordinarily waivers and estoppels are not imputable to infants, an estoppel in pais based on fraud and deceit will be imputed to an infant who has reached the age of discretion."); *Siegelstein v. Fenner & Beane*, 66 Ga. App. 345, 345 (6) (17 SE2d 907) (1941) ("It has been several times decided by this court that a minor may under certain circumstances be estopped from avoiding a contract which was induced by a false representation as to his age."); *Clemons v. Olshine*, 54 Ga. App. 290, 290 (2) (187 SE 711) (1936) ("A defendant is estopped from exercising his privilege of avoiding a fair and reasonable contract upon the ground of his minority at the time the agreement was made, where it appears that he has received, enjoyed, and consumed its irrestorable benefits, and, where it appears that the plaintiff, dealing in good faith, was induced to act to his injury by reason of the false and fraudulent representation of the defendant with respect to his apparent majority, and that, in view of all the surrounding facts and circumstances, the plaintiffs was justified in accepting such representation as true, and was free from fault or negligence on his own part, such as a failure to use all ready means of ascertaining the truth touching the defendant's apparent majority." (punctuation omitted)); *Watters v. Arrington*, 39 Ga. App. 275, 275 (146 SE 773) (1929) (same); *Hood v. Duren*, 33 Ga. App. 203, 203 (125 SE 787) (1924) (same).

[8] We disagree, then, with the Smiths' contention that the trial court erred in finding that Noah was estopped from avoiding the contract based upon inapposite precedent.

7

[in which] a[ ] [minor's] fraudulent act or representation is made with a view to deceive or defraud."[9]

The key question before us, then, is "whether the minor has arrived at those years of discretion when a fraudulent intent could be reasonably imputed to him."[10] And this rule is made analogous to situations in which it is "sought to hold a minor responsible for a tort or crime involving fraud, and his capacity for conceiving or executing a fraudulent intent is to be determined."[11] Indeed, once it is determined that the minor had the capacity for conceiving and executing a fraudulent intent, it is unnecessary for the other contracting party to

> go further and prove that they made an independent investigation as to the age of the [minor], [when] no fact or circumstance appears in the evidence . . . to throw some doubt or suspicion on the truthfulness of the representation, and thus prevent [the other party] from relying wholly

---

[9] *Jones v. Cooner*, 137 Ga. 681, 681 (74 SE 51) (1911); *accord Smith v. Lamb*, 103 Ga. App. 157, 159 (118 SE2d 924) (1961); *Clemons*, 54 Ga. App. at 290 (2).

[10] *Clemons*, 54 Ga. App. at 290 (2) (punctuation omitted); *accord Nichols v. English*, 223 Ga. 227, 229 (154 SE2d 239) (1967); *Wolff v. Hawes*, 105 Ga. 153, 153 (31 SE 425) (1898); *Smith*, 103 Ga. App. at 159.

[11] *Clemons*, 54 Ga. App. at 290 (2).

8

thereon, but charge [the other party] with the duty of making an additional investigation.[12]

Additionally, in Georgia, a person may be considered or found guilty of a crime once a person "has attained the age of 13 years at the time of the act, omission, or negligence constituting the crime."[13] And as for civil liability, "[i]nfancy is no defense to a tort action so long as the defendant has reached the age of discretion and accountability prescribed by Code Section 16-3-1 for criminal offenses."[14] Here, Noah was 17 when he executed the contract for his own benefit by using his father's name. Thus, at 17, Noah certainly had the capacity to conceive and execute a fraudulent intent, and the trial court did not err by concluding that he was estopped from voiding the contract.[15]

---

[12] *Id.*

[13] OCGA § 16-3-1.

[14] OCGA § 51-11-6; *see, e.g.*, *Horton v. Hinely*, 261 Ga. 863, 863-64 (1) (413 SE2d 199) (1992) (explaining that under OCGA § 51-11-6, nine-year-old boys who set fire to another boy's body were immune from tort liability); *Hatch v. O'Neill*, 231 Ga. 446, 447 (1) (202 SE2d 44) (1973) (holding that nine-year-old was immune from tort liability because he was younger than the age applicable to criminal liability).

[15] *See supra* note 7; *see also Off the Wall & Gameroom LLC v. Gabbai*, Case No. 4D19-2657, 2020 WL 4668055, at *4 (Fla. Dist. Ct. App. Aug.12, 2020) (holding that 13-year-old who was injured at trampoline facility after forging an adult's

2. Next, the Smiths argue that even if the arbitration agreement is valid, it is unconscionable. Again, we disagree.

An unconscionable contract is "abhorrent to good morals and conscience"[16] and is an agreement in which "one of the parties takes a fraudulent advantage of another."[17] But an agreement is *not* unconscionable merely because it appears to favor one party over another or may lead to hardship.[18] Indeed, we have repeatedly emphasized that parties should "be entitled to contract on their own terms without the courts saving one side or another from the effects of a bad bargain."[19] As a result, in

electronic signature to gain entry could not void the contract under the defense of infancy because "the child intentionally misrepresented information on the release and waiver agreement").

[16] *Innovative Images, LLC v. Summerville*, Case No. S19G1026, 2020 WL 5357820, at *7 (3) (b) (Ga. Sept. 8, 2020); *Thomas v. T & T Straw, Inc.*, 254 Ga. App. 194, 195 (561 SE2d 495) (2002).

[17] *Innovative Images*, 2020 WL 5357820, at *7 (3) (b); *Thomas*, 254 Ga. App. at 195.

[18] *See Thomas*, 245 Ga. App. at 195 (noting that parties are free to enter into contracts "even though they may enter into contracts that are unreasonable or which may lead to hardship" and that a contract is not unconscionable "simply because the terms appear to favor" one party over another); *William J. Cooney, P.C. v. Rowland*, 240 Ga. App. 703, 705 (524 SE2d 730) (1999) ("[Parties] should be permitted to enter into contracts that may actually be unreasonable or which may lead to hardship.").

[19] *Thomas* 245 Ga. App. at 196; *accord Rome Healthcare LLC v. Peach Healthcare Sys., Inc.*, 264 Ga. App. 265, 272 (4) (590 SE2d 235) (2003); *see Langley*

10

the absence of a showing that Noah "was fraudulently induced into signing the . . .

---

*v. MP Spring Lake, LLC*, 307 Ga. 321, 329 n.4 (834 SE2d 800) (2019) ("Georgia law recognizes and protects the freedom of parties to contract even though parties may enter into contracts that are unreasonable or which may lead to hardship." (punctuation omitted)); *see also Innovative Images*, 2020 WL 5357820, at *5 (3) (a) ("[R]ecognizing that all people who are capable of contracting shall be extended the full freedom of doing so if they do not in some manner violate the public policy of this state, this Court has long emphasized that courts must exercise extreme caution in declaring a contract void as against public policy and may do so only [when] the case is free from doubt and an injury to the public clearly appears." (punctuation omitted)). To the extent the Smiths suggest that the contract violated public policy, this argument is likewise without merit. *See, e.g.*, *Shields v. RDM, LLC*, __ Ga. App. __, __ (1) (844 SE2d 297, 301 (1)) (2020) ("[E]xculpatory clauses in Georgia are valid and binding, and are not void as against public policy when a business relieves itself from its own negligence." (punctuation omitted)); *Innovative Images*, 2020 WL 5357820, at *5 (3) (a) ("[I]n enacting the Georgia Arbitration Code, the General Assembly established a clear public policy in favor of arbitration." (punctuation omitted)); *Carrion v. Smokey, Inc.*, 164 Ga. App. 790, 790 (298 SE2d 584) (1982) ("The General Assembly has enacted no statute which either expressly or impliedly forbids contractual waivers of liability by participants in sporting or recreational events." (punctuation omitted)). Additionally, the Federal Arbitration Act preempts our state law exempting "personal bodily injury" claims from arbitration. *See Davidson v. A. G. Edwards & Sons, Inc.*, 324 Ga. App. 172, 173 (1) (a) (748 SE2d 300) (2013) ("Although this Court has not previously addressed whether the [Federal Arbitration Act] preempts OCGA § 9-9-2 (c) (10), insofar as it exempts from arbitration "personal bodily injury" claims, we find no reason why there should not be preemption in this regard as well. The FAA preempts any state law that conflicts with its provisions or undermines the enforcement of private arbitration agreements." (footnote omitted)).

11

agreement, [ ]or that [he] was delusional or insane at the time the contract was signed,"[20] we find no reversible error in the face of Noah's admitted forgery.[21]

---

[20] *Thomas* 245 Ga. App. at 196; *see also Innovative Images*, 2020 WL 5357820, at *7-8 (3) (b) (discussing substantive and procedural unconscionability, and explaining that, as to substantive unconscionability, "the General Assembly has expressed a policy permitting arbitration agreements in the GAC, and arbitration can be beneficial to either attorneys or clients, so we cannot say that no sane client would enter a contract that mandated arbitration of future legal malpractice claims and no honest lawyer would take advantage of such a provision," and as to procedural unconscionability, "it is the complaining party that bears the burden of proving that it was essentially defrauded in entering the agreement" (punctuation omitted)).

[21] The Smiths' contention that Noah's age made the contract unconscionable is a nonstarter. Exculpatory clauses in Georgia are valid, binding, and not void as against public policy, *see Shields*, __ Ga. App. at __ (1) (844 SE2d at 301 (1)). And as the trial court rightly concluded, Noah's age under these circumstances did not make him incapable of understanding what he was executing or, indeed, from perpetrating a fraud in *admittedly* signing the agreement by forging his father's electronic signature. *See Mullis v. Speight Seed Farms, Inc.*, 234 Ga. App. 27, 29 (505 SE2d 818) (1998) ("A non-inclusive list of some factors courts have considered in determining whether a contract is procedurally unconscionable includes the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice."). Although the trial court did not explicitly address the argument of unconscionability in its ruling, this is a question of law, which, in light of the court's other rulings, does not require remand on this particular question. *See Massey v. Allstate Ins. Co.*, 341 Ga. App. 462, 462 (2) n.9 (2017) (exercising discretion to address question of law in the first instance when "the material facts are undisputed"); *see also Aetna Workers' Comp. Access, LLC v. Coliseum Med. Ctr.*, 322 Ga. App. 641, 647 (2) (746 SE2d 148) (2013) ("The construction of contracts is initially a question of law for the court.").

12

3. Although the Smiths include an enumerated error that Adventure Air Sports should be unable to assert an equitable remedy against Noah because it has "unclean hands," the Smiths limit this assertion to their enumeration of errors and fail to include it as a separate argument within their appellate brief, thereby abandoning the contention by failing to provide argument or citation of authority in support of same.[22] But to the extent the Smiths argue within their brief that Adventure Air Sports "did not follow its own procedures," and was, accordingly, negligent in failing to discover Noah's fraud, we will address that claim.

Specifically, the Smiths assert that Adventure Air Sports did not use reasonable diligence to determine whether Dewayne authorized the "signature" on the agreement at issue. But as detailed and explained *supra*, the evidence established that Adventure Air Sports had a procedure of checking the driver's license of the parent or guardian

---

[22] *See* CT. OF APPEALS R. 25 (a) (2) ("Part Two [of the appellate brief] shall consist of the enumeration of errors and shall contain a statement of jurisdiction as to why this Court, and not the Supreme Court, has jurisdiction. A separately filed enumeration of errors is not required."); CT. OF APPEALS R. 25 (a) (3) ("Part Three [of the appellate brief] shall contain the argument and citation of authorities. It shall also include a concise statement of the applicable standard of review with supporting authority for each issue presented in the brief."); CT. OF APPEALS R. 25 (c) (1) ("The sequence of arguments in the briefs shall follow the order of the enumeration of errors, and shall be numbered accordingly."); CT. OF APPEALS R. 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

who executed the electronic agreement and marking electronic waivers "validated" after doing so. And in this case, there was evidence that Noah's waiver was marked "validated" in Adventure Air Sports' computer system. Accordingly, the assertion that Adventure Air Sports did not follow its own procedures is without merit.[23]

4. Finally, the Smiths argue that even if Noah's claims must be arbitrated, Dewayne and Leah's claims are separate from Noah's claims and should not be sent to arbitration. And because the trial court's order failed to explicitly rule upon Dewayne and Leah's claims, we must remand this case for further proceedings consistent with this opinion.

Adventure Air Sports's motion to dismiss and compel arbitration addressed both Noah's claims, as well as the claims brought separately by Dewayne and Leah, and the Smiths responded to those arguments. And at the hearing on the motion to dismiss and compel arbitration, the trial court asked the parties whether Dewayne and

---

[23] *See McKean v. GGNSC Atlanta, LLC*, 329 Ga. App. 507, 514 (3) (765 SE2d 681) (2014) ("[T]he party asserting the benefit of estoppel must have acted in good faith, and must have exercised reasonable diligence." (punctuation omitted)); *see also Clemons*, 54 Ga. App. at 291 (1) ("It was unnecessary for the plaintiffs to go further and prove that they made an independent investigation as to the age of the defendant, where no fact or circumstance appears in the evidence, such as the very youthful appearance of the defendant, to throw some doubt or suspicion on the truthfulness of the representation, and thus prevent them from relying wholly thereon, but charge them with the duty of making an additional investigation.").

Leah were estopped by Noah's actions. But the trial court's order only addresses Noah's claims when it concludes that *Noah* was estopped from voiding the agreement. The trial court did not provide any conclusions of law as to Dewayne and Leah's claims, nor does it acknowledge that Noah's parents brought separate claims. In fact, the order fails to even include Dewayne and Leah in the style of the case.

Accordingly, although we affirm the trial court's order as it applies to Noah's claims, we vacate the trial court's order to the extent that it also dismissed and submitted Dewayne and Leah's claims to arbitration,[24] and we remand for findings or fact and conclusions of law as to Dewayne and Leah's claims.[25]

*Judgment affirmed in part, vacated in part, and case remanded with direction. Rickman and Brown, JJ., concur.*

---

[24] It is undisputed by the parties that this was the impact of the trial court's order.

[25] *See Helton v. United Servs. Auto. Ass'n*, 354 Ga. App. 208, 213-14 (2) (840 SE2d 692) (2020) (vacating grant of summary judgment and remanding to trial court to consider arguments in the first instance); *Strength v. Lovett*, 311 Ga. App. 35, 44-45 (2) (b) (714 SE2d 723) (2011) (remanding question not reached by trial court).